# Staunton.

## GEIGER v. BLACKLEY & ALS.

### SEPTEMBER 26th, 1889.

1. HUSBAND.AND WIFE—*Domestic contracts—Presumption.*—Where wife contracts for such domestic matters as husband is held by the law responsible for, the presumption is that the contract is on behalf of her husband.

2. IDEM—*Separate estate—Liability.*—Where wife owns separate estate and contracts debts upon the faith and credit thereof, though the writing make no reference thereto, the same is liable for such debts.

Appeal from decree of circuit court of Augusta county, rendered June 12, 1888, in the cause wherein John W. Blackley and others, creditors of Fannie C. Geiger, are complainants, and Fannie C. Geiger and William C. Geiger, her husband, are defendants, the object of which was to charge her separate estate with the payment of debts contracted by her.. The decree being against her, she appealed. Opinion states the case.

*James Bumgardner, Jr.,* for the appellants.

*George M. Cochran* and *E. C. Kemper,* for the appellees.

HINTON, J., delivered the opinion of the court.

This is a suit in equity, brought to subject the separate estate of a married woman to the payment of certain debts alleged to have been contracted on the faith of her separate estate.

This estate was devised to her by her father, the late John Churchman.

The second clause of his will reads as follows:

"Second. To my three daughters, Susan F., Virginia, and Fannie C. Churchman, I give to each the sum of twelve thousand dollars, deducting as to each the amount she may be charged with in my account book of advances (generally kept in my desk), which book is specially referred to as a part of my will. The balance, when struck, that may be found due to each, I wish to be held by my executors as trustees, and invested in some safe, permanent interest-bearing fund, that each daughter may receive for her sole and separate use, notwithstanding any future marriage, the interest or dividends that may accrue, yearly or half-yearly, on the fund held for her benefit so long as she may live, but without diminution of the principal fund. In addition to the foregoing, I give to my daughter, Susan F. Churchman, for her sole and exclusive use forever, to be disposed of as she chooses, the sum of one thousand dollars, to be paid her as soon as my executor can command the sum from the general fund. At the death of either one of my said three daughters the fund held in trust for her shall pass and be distributed in all respects as if, owning the fund absolutely, she had died sole and intestate, and as if my said three daughters were without relations other than themselves and their descendants. It is to be understood, however, that any and every benefit in anywise accruing to either one of my said daughters under this will, or under any limitation thereof, shall be taken by the said trustees and held in all respects according to the trusts hereinbefore declared."

Now, it seems perfectly clear that it was the intention of the testator, to be collected from the words that he has used, to give his daughter, Fannie C. Churchman, now Mrs. Geiger, a separate estate in the interest or dividends arising from this fund, and that this was done, not for the purpose of protecting her against her own acts, but against the possible case of her

intermarriage with a reckless and improvident man. And, with respect to such estates, it has long been settled in this state, as well as in many other states of the Union, and in England, that the married woman can always bind the separate estate, there being no limitations or restrictions imposed by the instrument, by her contracts, whether verbal or in writing, by *expressly* stipulating that the estate shall be bound. And it has been held, further, in numerous cases, that the separate estate of the *feme covert* will be bound by her bonds, bills, notes, and contracts in writing, even where they contain no reference to the separate estate upon their face, because, as her acts in executing these instruments would be nugatory unless done with reference to her separate estate, it will be presumed that she intended to charge that estate, in order to give these instruments validity and operation. *Hawpe* v. *Burnett*, 25 Gratt., 486; *Darnell* v. *Smith's Administrator*, 26 Gratt., 878; Kelly's Contracts of Married Women, ch. 8; *Mathewman's case*, L. R., 3 Eq. Cases, 787. Whether in these cases the writing is operative because it is an exercise of the *jus disponendi*, or power of appointment, as it has been usually regarded in this state, or because it is a debt for which the estate is liable as incident to ownership, it is immaterial for us to inquire, for in each case there is an intention to charge the separate estate, the intention being in one case expressed and in the other implied; and this is a sufficient ground upon which to rest this liability, and it is upon this ground that the verbal contracts of the married woman are binding on the separate estate when she expressly stipulates that such contracts shall be a charge on the estate. The intention to charge being expressed, and the creditor having dealt with the married woman upon the faith of this charge, there is a liability which a court of equity will enforce. So far the decisions seem to be unanimous, and there is little room for doubt as to the rule or the reason upon which it rests; but when we come to the question whether the parol contracts of the married woman, made without an express

intention to charge, or, as they are sometimes called, her general engagements, such as goods sold to a married woman, or services rendered her, &c., are valid and binding on her separate estate, there is more difficulty, resulting from the fact that in entering into these engagements the married woman occupies a dual position—one when she acts and contracts for and on behalf of her husband in those domestic contracts for which the law holds him responsible, and the other when she acts and contracts for and on behalf of herself, for which equity holds her separate estate responsible. Kelly on Cont. Marr. Women, 245.

But even here it seems to be reasonably well settled that whilst the presumption will be that the contract was made for and on behalf of the husband, yet, to use the language of Vice-Chancellor Kindersley in Mathewman's case, *supra:* "If a married woman, having separate property, enter into a pecuniary engagement, whether by ordering goods or otherwise, which, if she were a *feme sole*, would constitute her a debtor, and in entering into such engagement she purports to contract, not for her husband, but for herself, and on the credit of her separate estate, and it was so intended by her and so understood by the person with whom she was contracting, that constitutes an obligation for which the person with whom she contracts has the right to make her separate equitable estate liable; and the question whether the obligation was contracted in this manner depends upon the facts and circumstances of each case, and, therefore, if the facts and circumstances are such as to lead to the conclusion that she was contracting, not for her husband, but for herself, in respect of her separate estate, that separate estate will be liable to satisfy the obligation." And, says Kelly, in his book on the Contracts of Married Women: "Since *Johnson* v. *Gallagher*, 3 DeG., F. and J., 515, the question has been, not whether the contract or engagement is in writing, but whether the transaction out of which the demand arose had any reference to or was made upon the

faith and credit of the separate estate." And this ought to be so, for when the contract is entered into with intent to make the estate the debtor, there can be no sound reason adduced for exempting the estate from liability for her debts in one case more than in the other. *Bank of Australia* v. *Lempriere,* L. R., 4 P. C., app. 594. Tested by these principles, the solution of this case is easy. The debts in dispute were contracted, as the record shows, by Mrs. Geiger herself upon the faith and credit of her separate estate, and charged to her, and not to her husband. Under these circumstances the separate estate must be held liable. It may be that in these cases the married woman is at a great disadvantage, by reason of the fact that her husband cannot testify, whilst the creditor can almost invariably have the benefit of other witnesses. But in this matter the remedy is with the legislature, and not with courts. The decree appealed from is affirmed.

DECREE AFFIRMED.