# Richmond.

## WASHINGTON AND OLD DOMINION RAILWAY V. WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY.

### June 8, 1916.

### Reheard March 15, 1917.

### Absent, Cardwell, J.

1. CONTRACTS — *Construction* — *Special Enumeration Followed by General Words—Ejusdem Generis.*—Under the *ejusdem generis* rule, applicable to the construction of written instruments, if a contract specifically enumerating losses from which a party is to be exempt is followed by words of general classification, the general words will be construed to mean other losses of the same kind as those enumerated.

2. CONTRACTS—*Construction—Ejusdem Generis Rule.*—The *ejusdem generis* rule is invoked only for the purpose of ascertaining the intent and meaning of the language under consideration, and should not be applied so as to do violence to the language employed in the instrument.

3. CONTRACTS — *Construction — Case in Judgment — Application of Ejusdem Generis Rule.*—In the case in judgment, the contract provides that the defendant "shall not be held responsible or liable for any loss, damage, detention or delay caused by fire, strike, civil or military authority, or by insurrection or riot, or by any other cause which is unavoidable or beyond its reasonable control, or, in any event, for consequential damages."

   *Held:* The words "or by any other cause which is unavoidable or beyond its reasonable control" should be restricted to causes of like nature with those enumerated, but the clause "or, in any event, for consequential damages" should not be so restricted, and the defendant should be exempt from "consequential damages" whether of like nature or not.

4. DAMAGES—*What are "Consequential Damages"—Case in Judgment.*—Consequential damages arise when certain special facts are known to the defendant at the time of the contract which would give notice to him that a breach of the contract would result in an otherwise unexpected loss. If the special circum-

stances are communicated to the defendant the damages resulting from the breach of such contract might reasonably be presumed to be contemplated by the parties and may be recovered by the plaintiff unless there is an agreement between the parties with reference to the damages. In the case in judgment, the agreement between the parties exempted the defendant from liability for such damages.

5. INTEREST—*When Allowed—Actions on Contracts.*—In Minor's Inst., Vol. 4, part 1 (ed. 1878), p. 739, it is said that "when the action is founded upon a promise, express or implied, to pay money at a given day, interest on the principal sum from that day is a legal incident of the debt, and the right to it founded on the presumed intention of the parties. It is further the established doctrine with us, that wherever there is thus a contract, express or implied, to pay interest, the obligation extends to the payment of the interest, as well as of the principal sum, and neither courts nor juries have, or ever had, the arbitrary power to dispense with the performance of either branch of the contract."

ON REHEARING.

6. DAMAGES—*What are "Consequential Damages."*—Consequential damage is such damage, loss, or injury as does not flow directly or immediately from the act of the party, but only from some of the consequences or results of such act. Consequential damage must in fact and effect remain the same, whether in the contemplation of either or both parties or not. It is, however, only when such damages are contemplated by both parties that they are recoverable. This mutual contemplation makes them recoverable, but does not change their character from consequential to direct damages. If the consequences are known, or such as ought to be known, to the seller when the contract is made, he will be liable unless he provides against them in the contract. If they are not such as he knows, or ought to know, will follow a breach, he will not be liable. It would, therefore, be vain and useless to contract against liability "in any event for consequential damages," unless the term is to be construed to refer to consequences in contemplation when the contract is made. Hence, it must follow from the foregoing postulate that the mere fact that consequential damage might result from delay in deliveries of the articles sold was contemplated by the parties at the date of the contract could not *ipso facto* convert such damage into direct damage; and any argument based upon that false premise cannot be sound.

7. INTEREST—*When Allowed—Actions on Contract.*—Section 3390 of the Code of Virginia is as follows: "The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and fix the period at which such interest shall commence, and in any action, whether on contract or tort, the jury may allow interest on the sum found by the verdict or any part thereof, and fix the period at which interest shall commence." The declaration contained the common counts in assumpsit and also a special count upon the contract, and the evidence was such as to have made it possible for the jury to find for the plaintiff, either upon the special contract, or upon the general assumpsit. Under all the circumstances of the case, the statute above quoted applied, and the jury had the right, in their discretion, to fix the date from which the interest should begin to run. Consequently, a peremptory instruction of the lower court to the jury that if they found for the plaintiff they should allow interest from the time the plaintiff's demand accrued, under the terms of the contract, was in conflict with the statute above quoted, and was such an invasion of the province of the jury as to constitute reversible error.

8. APPEAL AND ERROR—*Remittitur.*—Where the lower court erred in peremptorily directing the jury to allow interest to plaintiff from the time the plaintiff's demand accrued, where under section 3390 of the Code such allowance of interest was discretionary with the jury, the appellate court may affirm the judgment on condition that plaintiff relinquish the interest upon the principal sum found by the jury.

Error to a judgment of the Circuit Court of Loudoun county, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Affirmed in Part and Reversed in Part.*

The opinion states the case.

*C. E. Nicol, W. J. Lambert, C. V. Meredith, J. J. Darlington* and *T. S. Martin,* for the plaintiff in error.

*John J. Jackson, E. E. Garrett* and *Eppa Hunton, Jr.,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The Westinghouse Electric and Manufacturing Company and the Washington and Old Dominion Railway entered into a contract, dated April 12, 1912, by which the Electric Company agreed to furnish the equipment to electrify the road of the Washington and Old Dominion Railway which extends from the city of Washington to Bluemont, in Loudoun county, Virginia.

The Westinghouse company delivered at various times subsequent to the 12th of April, 1912, the equipment necessary for the electrification of the railway between the points named, and demanded payment of the balance due upon its account, amounting to $81,652.19, which the railway company refused to pay, and thereupon the Westinghouse company brought an action of trespass on the case in asssumpsit and filed its declaration, which contains the counts common to that form of action and a special count, and with the declaration filed an itemized account of its claim. To this action the defendant railway company pleaded non assumpsit and offsets, and with its plea of offsets filed an itemized account amounting to $87,227.69. On all of these pleas issue was joined and the jury found in favor of the plaintiff for the whole amount of its claim, with interest at the rate of five *per cent.* from May 1, 1913, subject to a credit of $791.13 as of that date, upon which judgment was entered, and upon the application of the railway company a writ of error was awarded which brings the case before us for review.

The plaintiff having offered evidence which tended to prove each item of its claim, the defendant, in order to maintain the issue upon its part, offered evidence tending to prove that the plaintiff, both prior to and at the time of the making of the contract, was informed of and knew the

following facts, and that it entered into the contract with that knowledge brought directly to its attention:

1. That the defendant was the lessee of the Bluemont division line of the Southern Railway, under a lease which required it to operate that line on and after July 1, 1912;

2. That the lease, by its terms, was liable to forfeiture if the defendant failed to do so, and that the defendant was further under bond to its lessees in the penalty of $100,000, conditioned upon the faithful performance of its under-taking;

3. That a responsible railroad constructor had entered into a binding contract with the defendant for performing all the work of electrifying its line ready for operation by electricity after July 1, 1912, conditioned only upon delivery by the plaintiff of the materials covered by its contract, and that the said work could and would have been completed in time but for the plaintiff's failure to deliver its materials within the contract time;

4. That the defendant had no steam locomotives, motive power, cars or equipment, except cars and equipment for operating by electricity, and was relying upon the plaintiff's performance of its contract within the delivery dates fixed by the contract, to enable it to carry out its obligation to operate the line on and after July 1, 1912;

5. That by reason of the plaintiff's said failure to deliver promptly, the contractor for construction was unable to maintain his working organization, and was subject to other delays, which, without fault or want of due and reasonable diligence and effort upon his part, rendered him unable to complete performance of his said contract with the defendant until December 27, 1912;

6. That by reason of the plaintiff's said delays in deliveries, exclusively, the defendant was compelled, without any other alternative, to hire other motive power and equipment to comply with its necessity and duty to commence to

operate its said line on July 1st, and to continue to operate it thereafter until its electrification was so as aforesaid completed, namely, until December 27, 1912, at greatly increased expense, and also with greatly diminished revenue than would have been incurred and realized, respectively, had it been enabled to operate it electrically during that period, as, but for the plaintiff's said default, it would have been;

7. That the materials which the plaintiff so contracted to deliver within the said contract dates, and which were necessary to the electrification of the defendant's line within said period, were materials which could not be bought in the open market in time to avoid the necessity of hiring other motive power, namely, steam motive power for the operation of the line beginning on July 1st.

This evidence was offered for the purpose of showing that this contract was entered into by both the plaintiff and the defendant with knowledge on the plaintiff's part of each of these facts, and therefore, in fact and in contemplation also, by operation and construction of law, of the class of damages which resulted, and which are referred to in the prayers as damages, which both parties then knew would result from its failure to comply with its contract, they are not consequential damages within the meaning of the language of this contract, especially in view of its erased provision that acceptance should not waive delay, and therefore that class of damages is recoverable.

The court refused to permit evidence to be introduced in proof of any of the enumerated facts.

By article 6 of the contract it is provided that the Westinghouse company "shall not be held responsible or liable for any loss, damage, detention or delay caused by fire, strike, civil or military authority, or by insurrection or riot, or by any other cause which is unavoidable or beyond its reasonable control, or, in any event, for consequential damages."

79

Before we come to consider what are to be deemed consequential damages, as the phrase is used in this contract, it is well to observe that the railway company insist that, under the canon of construction known as the *ejusdem generis* rule, which is to the effect that general terms of a statute or contract are subordinated by the sense of the preceding and connected particulars, the provision under consideration having enumerated losses by specific causes for which the company would not be responsible, such as detention or delay caused by fire, strike, civil or military authority, or by insurrection or riot, which were followed by the general term, "consequential damages," the consequential damages are to be limited to such as are of like kind with those causes of loss which had been specifically enumerated.

We do not doubt the rule invoked is established by authority, but we do not think that it influences the construction of the term of the contract under consideration to the advantage of the plaintiff in error. It will be observed that after the enumeration of the causes of damage for which the Westinghouse company is not to be held liable, concluding with "insurrection or riot," there follows the phrase, "or by any other cause which is unavoidable or beyond its reasonable control." That general phrase is, we think, subject to the rule of construction invoked, and if there were any contention with respect to that provision, it should be confined to damages flowing from like causes to those enumerated; but the contract goes further and says, "or, in any event, for consequential damages," making use of a technical phrase, which has an ascertained and definite meaning. The *ejusdem generis* rule is invoked only for the purpose of ascertaining the intent and meaning of the language under consideration, and should not be applied so as to do violence to the language employed in the instrument under consideration. We think it plain that the Westinghouse

company was to be exonerated from any responsibility or liability for loss, damage, detention or delay caused by fire, strike, civil or military authority, or by insurrection or riot, as specifically enumerated, or by any other cause which is unavoidable or beyond its reasonable control, confining the operation of this general language to causes of a like kind with those specifically enumerated, and then as an independent proposition, accentuated by the use of the phrase "in any event", "from consequential damages."

There were two items in the bill of offsets, one for $6,970.40, and the other for $2,765.05 which the circuit court held were not consequential damages and could properly be set off against the plaintiff's demand, but these two items counsel for the plaintiff in error, for reasons satisfactory to them and doubtless to their client, refused to support by testimony.

Damages are either direct or consequential. Sutherland on Damages, Vol. 1, section 14, speaking of direct damages says that the term includes "all such injurious consequences as proceed immediately from the cause which is the basis of the action; not merely the consequences which invariably or necessarily result and are always provable under the general allegations of damages in the declaration, but also other direct effects which have in the particular instance naturally resulted and must be alleged specially to be recovered for."

Consequential damages arise when certain special facts are known to the defendant at the time of the contract which would give notice to him that a breach of the contract would result in an otherwise unexpected loss. If the special circumstances are communicated to the defendant the damages resulting from the breach of such contract might reasonably be presumed to be contemplated by the parties and may be recovered by the plaintiff unless there is an agreement between the parties with reference to the damages.

Sedgwick on Damages, section 141, discussing the difference between damages arising from tort and from breach of contract, says that, "The duty to refrain from a tort is a duty which no one can avoid; it is imposed upon him by the law, and no act of his can increase or diminish it. But in entering into a contract he is undertaking a duty which the law does not require of him; its assumption is purely voluntary, and fairness requires that he should be able to understand the extent of the obligation he undertakes. A just rule, therefore, would put upon a person who commits a tort the risk of all proximate consequences of his wrong, but upon one who breaks a contract such risk as he could have foreseen when he undertook the duty; and this appears to be the conclusion of the law. * * *

"In determining the amount of damages due for breach of contract or for other assumed obligation, the· test is whether the damage is natural,· or within the actual or potential contemplation of the parties at the time the obligation was assumed. If the damage in question was not natural, then there can be no recovery for it. To justify recovery, it must be both natural and proximate."

In section 143 it is stated: "In actions of tort, where the wrongdoer voluntarily or negligently did an act which in itself was illegal, he is responsible for all the proximate consequences of the wrongful act, whether the consequences are natural or not. And even when the tort is accomplished through a failure to perform a specific duty, as by the failure of a pubic service company to supply guards or furnish police protection, the rule is the same. Where, however, an action, though in form based on a tort, really amounts to an action for breach of a contract, the rule in this respect is the same as in case of breach of contract; as for instance in case of an action against a carrier for delay in the delivery of goods." The author then proceeds to discuss the rule in the case of *Hadley* v. *Baxendale,* 9

Ex. 341, 23 L. J. Ex. 179; 18 Jur. 358; 26 Eng. L. & Eq. 398; and in a note to section 144 (of Sedgwick) it is said that "so entirely is the later law founded on this case, that the great body of cases since decided involving the measure of damages for breach of contract, resolve themselves into a continuous commentary upon it." And this seems to be true as well of American as of English cases.

In that case the plaintiffs were the owners of a steam mill. The shaft was broken, and they gave it to the defendant, a carrier, to take to an engineer, to serve as a model for a new one. On making the contract the defendant's clerk was informed that the mill was stopped, and that the shaft must be sent immediately. He delayed its delivery; the shaft was kept back in consequence; and in an action for breach of contract they claimed, as specific damages, the loss of profits while the mill was kept idle. It was held that if the carrier had been made aware that a loss of profits would result from delay on his part, he would have been answerable. But as it did not appear he knew that the want of the shaft was the only thing which was keeping the mill idle, he could not be made responsible to such an extent. The court said:

"We think the proper rule in such a case as the present is this: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstance under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the

breach of such a contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were widely unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which, would arise generally, and in the great multitude of cases, not affected by any special circumstances from such a breach of contract. For had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them. The above principles are those by which we think the jury ought to be guided in estimating the damages arising out of any breach of contract."

A case very similar to that of *Hadley* v. *Baxendale* is that of *Swift River Co.* v. *Fitchburg Railroad Co.*, 169 Mass. 326, 47 N. E. 1015, 61 Am. St. Rep. 288. That was an action against a railroad company for failure to deliver, with reasonable dispatch, two steel boilers and fittings and castings. The defendant admitted that the delay in delivery was caused by its negligence in first sending the merchandise to a wrong address. The court held, that "if there is no evidence which fairly tends to show that the defendant had notice of the circumstances attending the ordering of the boilers, or of the nature of the plaintiff's business, and the use to which the boilers were to be put, or of the fact that the plaintiff's mill was stopped or to be stopped for the purpose of making a change in boilers, and such notice cannot be inferred fairly from the character of the property, or from the fact that the old boilers were sent over the defendant's road to the same person who had furnished the new ones soon after those had been shipped, the plain-

tiff is not entitled to damages, as they could not have been within the contemplation of the parties when the goods were received for transportation, and were not the proximate result of the delay on the defendant's part, except in the single particular of cash expended for telegrams, time and expenses looking for boilers, and team for hauling expected boilers."

The effect of that decision is that, under the facts of that case the loss was not the proximate result of the delay, and the damages were not, therefore, direct, but consequential, and not being within the contemplation of the parties, there being no evidence which tended to show that the defendant had notice of the circumstances attending the order of the boilers and the nature of the plaintiff's business and the use to which they were to be put, there could be no recovery.

In the case under consideration, we are of opinion that the damages claimed by way of set-off were not direct but consequential, but that inasmuch as the evidence excluded tended to prove that the Westinghouse company had notice of all the facts necessary to establish its liability for the damages claimed, as being within the contemplation of the parties, the evidence should have been admitted but for the contract which excludes its liability for all consequential damages.

The cases upon the subject are without number, and this opinion could be indefinitely prolonged in their discussion, but the principles which control are, we think, established by the authorities which we have cited.

Counsel for defendant in error properly admit that but for the operation of the contract entered into between the parties, which excludes liability for consequential damages, the evidence objected to should have been admitted, but we are of opinion that the case is covered by the contract and controlled by it, and that, therefore, there was no error in the exclusion of the testimony by the circuit court.

There is a difference between the parties as to when the contract between them became operative. On behalf of the railway company it is contended that it took effect on the 12th of April, 1912, while the Westinghouse company insist that it only took effect from the date when it was ratified by an executive officer of the Westinghouse company; but in the view we have taken of this case, we deem it unnecessary to pass upon this question.

Counsel for the petitioner assign as error the allowance of interest upon the verdict.

In Minor's Inst., Vol. 4, part 1 (ed. 1878), p. 739, it is said that "when the action is founded upon a promise, express or implied, to pay money at a given day, interest on the principal sum from that day is a legal incident of the debt, and the right to it founded on the presumed intention of the parties. And it is further the established doctrine with us, that wherever there is thus a contract, express or implied, to pay interest, the obligation extends to the payment of the interest, as well as of the principal sum, and neither courts nor juries have, or ever had, the arbitrary power to dispense with the performance of either branch of the contract."

To the same effect see *Chapman's Admrs.* v. *Shepherd's Admr.*, 24 Gratt. (65 Va.) 383; *Kent's Admr.* v. *Kent's Admr.*, 26 Gratt. (69 Va.) 845; *Roberts' Admr.* v. *Cocke*, 28 Gratt. (69 Va.) 217.

Upon the whole case, we are of opinion that there is no error in the judgment complained of, which is affirmed.

*Affirmed.*

REHEARD MARCH 15, 1917.

WHITTLE, P., delivered the opinion of the court.

This case is before us upon a rehearing of the judgment of this court pronounced at the June term, 1916, 98 S. E. 131. At the first hearing three principal questions were discussed, and the same questions are now submitted for our consideration. They are these:

I. Whether the true contract between the parties is alone evidenced by the printed draft bearing date April 12, 1912, or by that contract with the modifications proposed in the letter of May 31, 1912, written by the Westinghouse, &c. Co., plaintiff below, to the railway company, the defendant.

II. The correctness of the ruling of the trial court in excluding the parol evidence offered by the defendant in support of certain items of set-off filed with its plea. And

III. The correctness of the court's instruction in regard to the allowance of interest.

At the former hearing it was not deemed necessary to pass upon question I, since the decision was mainly rested on the construction of certain stipulations in the contract of April 12, 1912, which were not affected by the letter of May 31, 1912. Inasmuch, therefore, as we are disposed to adhere to the former decision of this court upon that branch of the controversy, it is not thought necessary to pass upon question I.

Clause 6 of the printed contract was originally as follows:

"The company shall not be held responsible for any loss, damage, detention or delay caused by fire, strike, civil or military authority, or by insurrection or riot, or by any other cause which is unavoidable or beyond its reasonable control, or, in any event, for consequential damages, and the receipt of the apparatus by the purchaser upon its delivery shall constitute a waiver of all claims for loss or damage due to delay; * * *"

But at the instance of the defendant the following stipulation was erased: "and the receipt of the apparatus by the purchaser upon its delivery shall constitute a waiver of all claims for loss or damages due to delay."

The circuit court was of opinion that all items of set-off filed with the plea, "except perhaps the items for extra cost of overhead construction and extra cost of engineering," constituted consequential damages for which by the express terms of clause 6 of the contract the plaintiff in no event was to be held liable.

The printed contract also contained the following agreement:

"All previous communications between the parties hereto, either verbal or written, with reference to the subject matter of this proposal, are hereby abrogated, and this proposal, duly accepted and approved, constitutes the agreement between the parties hereto, and no modification of this agreement shall be binding upon the parties hereto, or either of them, unless such modifications shall be in writing, duly accepted by the purchaser and approved by an executive officer of the company."

We shall not repeat, nor add much by way of elaboration, to what has been so well said by Keith, P., upon this phase of the litigation.

The term "consequential damages" is thus defined in Black's Law Dictionary: "Such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dict. (2d ed.), p. 249. Substantially similar definitions appear in all the authorities on the subject.

It is plain that the items of set-off filed with defendant's plea belong to the class of consequential damages as above defined; and, in view of the foregoing stipulatons of the printed contract, we are of opinion that the trial court

rightly rejected the parol evidence offered in support of the plea.

The fundamental error in the defendant's contention, as it seems to us, flows from the assumption that if at the date of the contract the parties contemplated that consequential damage might result from delay in delivery of the articles sold, such knowledge had the effect of converting what otherwise would have been consequential damage into direct damage. To the contrary, consequential damage must in fact and effect remain the same, whether in the contemplation of either or both parties or not. It is, however, only when such damages are contemplated by both parties that they are recoverable. This mutual contemplation makes them recoverable, but does not change their character from consequential to direct damages. If the consequences are known, or such as ought to be known, to the seller when the contract is made, he will be liable unless he provides against them in the contract. If they are not such as he knows, or ought to know, will follow a breach, he will not be liable. It would, therefore, be vain and useless to contract against liability "in any event for consequential damages," unless the term is to be construed to refer to consequences in contemplation when the contract is made. Hence, it must follow from the foregoing postulate that the mere fact that consequential damage might result from delay in deliveries of the articles sold was contemplated by the parties at the date of the contract could not *ipso facto* convert such damage into direct damage; and any argument based upon that false premise cannot be sound.

Certain expressions in some of the authorities would seem, at first blush, to support the contention that consequential damages under one state of facts may be direct damages under another. Upon analysis, however, it will be found that the authorities, notwithstanding some occasional confusion in terms, are practically unanimous in

holding that consequential damages are of the same general character always, and that they may or may not be the subject of liability according to the facts of the individual case. The cases so insistently relied on to sustain the opposing theory are only persuasive because of certain expressions in the opinions, for the question here involved was not in issue in any of them. All that these cases decide is that certain resulting damages, which it was claimed were so remote as to bar recovery, could be recovered. It is conceded in this case that the damages claimed were not so remote as to be barred, but that while not too remote they were damages which resulted, not immediately from the alleged breach, but indirectly from the operation of an intermediate cause or causes. Such damages, nevertheless, are consequential and cannot be recovered in this case because of the express provision of the contract. Any other construction ignores that provision, for unless applicable to such damages as are here contended for, it is difficult to conceive of any damages to which the language could be applied.

Upon these considerations, we feel constrained to hold to our former conclusion on that question.

III. The third question involves the correctness of the instruction of the court upon the allowance of interest.

The record shows that a majority of the jury were not in favor of allowing any interest, and upon their request for information as to their duty in the premises, the court gave the following mandatory instruction:

"The court tells the jury that if they find for the plaintiff they should allow interest from the time the plaintiff's demand accrued under the terms of the contract—that is, from the time the payments became due and payable as set out in the contract—and this interest follows in this case and should be allowed because the defendant has introduced no evidence of damage which could be set off or allowed as against said interest."

Thereupon the jury gave interest upon $81,652.19, the principal sum allowed by their verdict, at five per cent. from May 1, 1913, subject to a credit of $791.13 as of that date, to March 16, 1915, the time at which the verdict was rendered.

Section 3390 of the Code of Virginia is as follows: "The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and fix the period at which such interest shall commence, and in any action, whether on contract or tort, the jury may allow interest on the sum found by the verdict or any part thereof, and fix the period at which interest shall commence. If a verdict be rendered which does not allow interest, the sum thereby found shall bear interest from its date, and judgment shall be entered accordingly."

Without meaning to hold that where there has been a clear and unambiguous agreement for the payment of interest from a fixed and definite date, the jury may remit the interest between that date and the date of their verdict, we are of opinion that under the particular facts of this case the peremptory instruction of the court to the jury on the subject of interest was in conflict with the statute above quoted, and was such an invasion of the province of the jury as to constitute reversible error. The case was really before the jury in two aspects—one upon the special contract in its original form, and the other upon the contract as it was claimed to have been modified by certain correspondence. Moreover, there was some room to contend, and some apparent contention, at least upon the part of the defendant in error, that this contract as finally signed by its executive officers, was never accepted by the plaintiff in error. The declaration contained the common counts in assumpsit and also a special count upon the contract, and the evidence was such as to have made it possible for the jury to find for the plaintiff, either upon the special contract, or upon

the general assumpsit. We think, under all the circumstances of the case, that the statute above quoted applied, and that the jury had the right, in their discretion, to fix the date from which the interest should begin to run.

For the error of the trial court in giving the instruction complained of, the judgment must be reversed, the verdict set aside and the case remanded for a new trial to be had therein in conformity with the views expressed in this opinion.

If, however, the defendant shall, within ninety days from the date hereof, elect in writing to relinquish the interest upon $81,652.19, the principal sum found by the jury, at five per cent. from May 1, 1913, subject to a credit of $791.13 as of that date, to March 16, 1915, the date of the verdict (such relinquishment to be filed with the papers in the cause in the clerk's office of the Circuit Court of Loudoun county as part of the record), then said judgment shall stand affirmed. But in the event of a new trial, this provision is not to influence the jury in determining the question of interest.

There is authority and precedent for this disposition of this branch of the case. See *Buena Vista Co.* v. *McCandlish*, 92 Va. 306, 23 S. E. 781; *Moreland* v. *Moreland*, 108 Va. 107, 60 S. E. 730.

It may be added that so far as the question of consequential damages is concerned, it is immaterial whether the jury based their verdict upon the original contract or not, since under that contract such damages were stipulated against, and without it, on the other hand, the delivery dates upon which the plaintiff in error relies as the basis for its claim to such damages are eliminated.

SIMS, J., dissenting:

The following statement will disclose the reasons which force me to dissent from the majority opinion in this case:

## *What are Consequential Damages?*

They are indirect damages, as distinguished from direct damages. 1 Sutherland on Dam. (3rd ed.), secs. 14, 15; 1 Sedgwick on Dam. (9th ed.), sec. 111; Anderson's Dict. Law, p. 307; Black's Law Dict. (2nd ed.), p. 314; 5 Am. & Eng. Ency. Law, p. 6; Hale on Dam. (1896), p. 39.

Direct damages are the result of losses which proceed immediately (not necessarily in time, but causatively) from wrongful conduct, without the intervention of any intermediate cause. (We shall presently inquire more concretely, What are direct damages upon the breach of a contract?) Hale on Dam., p. 36; Sedgwick on Dam., sec. 111.

Indirect (consequential) damages are the result of losses which do not proceed immediately (causatively) from wrongful conduct, but from such conduct setting in operation an intermediate cause or causes (which, of course, is, or are, not independent), from which latter the losses directly result. Hale on Dam., p. 39.

Both direct and indirect (consequential) damages are recoverable if they are proximate. Hale on Dam., p. 36; Sedg. Dam., sec. 111; *Louiseau* v. *Arp*, 21 S. D. 566, 114 N. W. 701, 14 L. R. A. (N. S.) 855-8, 130 Am. St. Rep. 741.

Direct damages are always proximate and are recoverable whether they were in fact within the contemplation of the parties or not. (In actions of contract the loss of the thing contracted for is almost necessarily contemplated by the parties, but in some cases the extent of the damage, although direct, is unexpected, and "whether the parties to the contract had in mind the damages which might result from a breach does not in the least affect their liability for a loss resulting from a breach. * * * Compensation is recoverable * * * if the loss is direct,"—and also if indirect [consequential] if proximate, as we shall presently see.) Hale on Dam., pp. 38-9; Sedg. Dam., sec. 111, 121-b.

Indirect (consequential) damages are sometimes proximate and sometimes remote. The former are always recoverable in actions of tort; and are recoverable in actions of contract unless the contract exempts from liability therefor. The latter are never recoverable, either in actions of tort or contract. Hale on Dam., p. 42; Sedg. Dam., sec. 111.

Indirect (consequential) damages are proximate when they are the natural (normal) and probable result (sometimes spoken of as the *natural,* uncoupled with *probable,* result), of the wrongful conduct. Hale on Dam., pp. 42, 48; Sedg. Dam., sec. 111.

We come now, in the light of the elementary principles and rules above mentioned, to the inquiry as to—

What are direct damages upon the breach of a contract? and, negatively, what are not indirect (consequential) damages in such case?

'The *direct* consequences of a breach of contract is a *loss* of the thing contracted for * * *' (Italics supplied.) Hale on Dam., p. 38.

What is *the thing contracted for* must depend upon the construction of the contract in question. That construction depends in part upon the surrounding circumstances known to both parties at the time the contract was made. *Shenandoah, &c. Co.* v. *Clarke,* 106 Va. 100, 55 S. E. 561; *Merriam* v. *United States,* 107 U. S. 437, 2 Sup. Ct. 536, 27 L. Ed. 531; *U. S.* v. *Bethlehem Steel Co.,* 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731; 1 Sutherland on Dam. (3d ed.), sec. 50, p. 149; *Baldwin* v. *U. S. Tel. Co.,* 45 N. Y. 750, 6 Am. Rep. 165; *Hydraulic, &c. Co.* v. *McHaffie,* L. R. 4 Q. B. 670; *Meyer* v. *Hamer,* 70 App. Div. 529, 535, 75 N. Y. Supp. 261; Sutherland on Dam. (3d ed.), sec. 50, pp. 149-150-1; Hale on Dam., pp. 61-2; *Richardson* v. *Chynoweth,* 26 Wis. 656; 8 R. C. L., p. 27; *Hadley* v. *Baxendale,* cited below; and many other cases on this subject too numerous to cite.

What is known as *the third rule* in the case of *Hadley* v. *Baxendale* (9 Ex. 341, 23 L. J. Ex. 179, 18 Jur. 358, 26 Eng. L. & Eq. 398) decides that if damages result from special circumstances, notice of which is given to a vendor at the time a contract of purchase is made, all damages may be recovered which are the natural and probable consequences of a breach of the contract by the vendor under those circumstances. It does not hold that such damages are indirect (consequential), as counsel for defendant in error, plaintiff in the court below (hereinafter designated plaintiff), contend. Nor does it hold that such damages are direct. In truth, of necessity, in the very nature of the case, and under the elementary rules above mentioned, damages recoverable under the third rule in *Hadley* v. *Baxendale*, may be both direct and indirect (consequential) damages. All damages which are the natural (normal) and probable result of a breach of contract under the special circumstances referred to are recoverable under such rule. That is to say, both direct and indirect (consequential) damages. The limitation in this rule is that they must be the natural and probable consequences of a breach of the contract under those circumstances, *i. e.*, the loss and damages must be proximate, which includes both direct and indirect (consequential) damages. Hale on Dam., pp. 58-9. Hence, this case does not hold that the damages recoverable under its third rule are solely indirect (consequential) damages, but the contrary.

Whether in a particular case, the damages recoverable under the third rule in *Hadley* v. *Baxendale* are direct or indirect (consequential) must be determined by the result of the inquiry of whether they proceed immediately from the *loss of the thing* contracted for, without the intervention of any intermediate cause, such as above referred to, or from such loss setting in operation such an intermediate cause or causes from which latter the losses or damages

directly result. In principle this is necessarily true. This inquiry unescapably attends every ascertainment of whether damages in any case are direct or indirect (consequential) — when due to special circumstances, as well as in other cases. All causes from which loss and damage may proceed immediately (directly) are causes which also may set in operation other and intermediate causes from which latter also loss and damage may directly result. The loss of a thing contracted for may in every case cause direct and indirect (consequential) damages; in the former case they are direct; in the latter indirect (consequential) damages.

Accordingly we find that the authorities, in dealing with a situation where there is no intermediate cause between the breach of the contract and the damage resulting from the loss of the thing contracted for (that thing being ascertained from a construction of the contract in the light of the surrounding [special] circumstances, hold:

"If it appear by such circumstances that the contract was entered into, and known by both parties to be entered into, to enable one of them to serve or accomplish a particular purpose, whether to secure a special gain or avoid an anticipated loss, the liability of the other for its violation will be determined and the amount of damages fixed with reference to the effect of the breach in hindering or defeating that object. The proof of such circumstances makes it manifest that such damages are within the contemplation of the parties. Looking alone at a contract of this character, silent as to the circumstances which were in view, such damages are *consequential,* and sometimes appear to arise very remotely and collaterally to the undertaking violated. But when the contract is considered in connection with the extrinsic facts, there is established a natural and proximate relation of cause and effect between its breach and the injury to be compensated. If all such facts as are admissible to justify the proof of *consequential damages* were re-

cited in the contract as the law connects them with it when known, or if the legal obligation which the law imposes by reason of them had been expressed in words by the parties, such damages would be *direct* and not *consequential."* (Italics supplied.) Sutherland on Dam., sec. 50, pp. 149-150.

Discussing the third rule in *Hadley* v. *Baxendale,* viz.: that "When, at the time of making a contract, notice is given the vendor of the purpose of making it, or of special circumstances affecting the quantum of damages likely to result from a breach, damages may be recovered for all the natural and probable consequences of a breach under those circumstances," Hale on Damages, p. 61, says:

"The reason for it is found in the fundamental principle of compensation underlying the entire law of damages. The amount of benefit which a party to a contract would derive from its performance is the measure of damages for its breach." (Citing *Alder* v. *Keighley,* 15 Mees. & W. 117.) "When defendant knows that plaintiff contracts for the purpose of securing a special benefit, he must be deemed to have contracted that plaintiff should receive such benefit, and he is liable for a breach accordingly. The intention of the parties must be arrived at by interpreting the contract in the light of the surrounding circumstances known to both parties, and *such circumstances form as much a part of the contract as if they were written into it.* If the special circumstances were in fact written into the contract, the damages arising from a breach under these circumstances would be *direct* and not *consequential."* (Italics supplied.)

The same author (Hale on Damages), pp. 61-2, adds:

"If the contract of sale is made to enable the vendee to secure a special benefit and that object is known to defendant, the principle of just compensation requires him to make good the loss arising from his failure to deliver the

goods." (Citing *Hammer* v. *Schoonfelder*, 47 Wis. 455, 2 N. W. 1129; *Manning* v. *Fitch*, 138 Mass. 275; *Beeman* v. *Benta*, 118 N. Y. 538, 23 N. E. 887, 16 Am. St. Rep. 779.) "In such case the contract interpreted in the light of the object for which it was made, is more than a mere contract of sale."

Referring to the case of *Hammer* v. *Schoonfelder*, *supra*, where defendant agreed to furnish plaintiff, a butcher, with ice, knowing that it was needed to preserve meat of plaintiff, and there was a failure to supply the ice, in consequence of which plaintiff lost considerable meat, for which recovery was allowed, 1 Sutherland on Dam., p. 151, says:

"This case was not one of simple contract of sale. The special circumstances, known to both parties, made it more than that in its aims and consequences, although the terms in which it was made, considered alone, imported only a contract of sale. The vendor knowing the purpose for which it was wanted, was held, by implication, to undertake to deliver it as agreed in order that the vendee should not suffer loss on his fresh meat from his inability to preserve it for want of ice. Such being the contract, the loss which occurred from its breach was the *direct* consequence thereof." (Italics supplied.)

"In such case the special circumstances become an implied element of the contract and of the duty thereby imposed." 8 R. C. L., p. 27.

Indeed, such is the effect of the holding in the *Hadley* v. *Baxendale* case itself.

In the case of *Swift Run Co.* v. *Fitchburg Rd. Co.*, 169 Mass. 326, 47 N. E. 1015, 61 Am. St. Rep. 288, cited in the opinion of this court upon the former hearing of the instant case, the defendant had no notice of the special circumstances.

A number of cases decided by the United States Circuit Courts, falling within the third rule in *Hadley* v. *Baxen-*

*dale,* and where there was no intervening cause between the loss of *the thing* contracted for and the damage resulting from such loss, hold that the damages in such cases are direct. *Iowa Mfg. Co.* v. *B. F. Sturtevant,* 162 Fed. 460, 89 C. C. A. 346, 18 L. R. A. (N. S.) 575; *McDonald* v. *Kansas City, &c. Co.,* 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110; *Northwestern, &c. Mfg. Co.* v. *Great Lakes, &c. Works,* 181 Fed. 38, 104 C. C. A. 52; and other cases cited in such cases.

To the same effect are also the following cases: .

See *Richardson* v. *Chynoweth,* 26 Wis. 656.

In *Willey* v. *Fredericks,* 10 Gray (Mass.) 357, the action was for damages for breach of contract to build a proper wall. Owing to such breach of contract the owner lost the use of certain land. Held:

"Damages for the loss of the use of the land during such time are not remote, speculative or contingent, but the *direct* and immediate consequences of the defendants' failure to perform their contract and duty." (Italics supplied.)

Counsel for plaintiff take the position that in "substantive law, the whole realm of damages is divided into two classes, 'direct' and (indirect) 'consequential.'" This position, as we have seen, is correct. Counsel thereupon with great ability, press forward to and attempt to maintain the further position that as in "pleading and practice the whole realm of damages which can be recovered is divided into 'general' and 'special' damages * * * and that 'special damages' are the same as 'consequential damages' which are not so remote that they cannot be recovered." That is to say, that all direct damages are general and all special damages are indirect (consequential) damages. The following authorities are cited and relied on to sustain this position: *Loesch* v. *Koehler,* 144 Ind. 278, 41 N. E. 326, 43 N. E. 129, 35 L. R. A. 682-4; *Thomas* v. *Dingley,* 70 Me. 100, 35 Am. Rep. 310-311, 314; *Battley* v. *Faulkner,* 3 Barn.

and Ald. 294, 3 Common Law Rep. 290; *Laing* v. *Calder*, 8 Penn. 479, 49 Am. Dec. 533-4; Sedg. on Dam. (4th ed.), p. 682; Hale on Dam., pp. 36, 39, 223; *Eaton* v. *Boston, &c. R. R.*, 51 N. H. 504, 12 Am. Rep. 147; *Wallace* v. *Ah Sam*, 71 Cal. 197, 12 Pac. 46, 60 Am. Rep. 534-7; 4 Words and Phrases, p. 3060; *Lee* v. *Hill*, 84 Va. 919, 921, 6 S. E. 473; *Wood* v. *American Nat. Bank*, 100 Va. 306, 309, 40 S. E. 931; *N. & W. R. Co.* v. *Spears*, 110 Va. 110, 113, 65 S. E. 482; Sutherland on Dam. (3d ed.), sec. 14.

An examination of these authorities discloses that they do hold, it is true, that "special damages" must be specially pleaded or alleged to be recovered; but they fall short of holding that all general damages are direct and that all special damages are indirect (consequential) damages. It is manifest from these authorities that indirect (consequential) and special damages are not terms of identical meaning. They do not cover the same ground. It is true that their boundaries interlock. These boundaries cover in part the same territory of the law of damages, but they do not coincide throughout. These authorities do not hold that special damages may not also sometimes be direct damages. We have seen that they may be. Those authorities do not hold that in such case special damages need not be specially pleaded or alleged to be recovered. On the contrary, Sutherland on Dam. (3d ed.), sec. 14, in discussing direct damages, says:

"*What these include.* These include damages for all such injurious consequences as proceed immediately" (not necessarily in time but causatively) "from the cause which is the basis of the action; not merely the consequences which invariably or necessarily result and are always provable under the general allegations of damages in the declaration, but also *other direct* effects which in the particular instance naturally resulted and *must be alleged specially* to be recovered for." (Italics supplied.)

Special damages are distinguished from general damages by a wholly different test from that of whether they are direct or indirect (consequential); namely, by the test of whether the damages are implied by law, in which case they are general damages, or whether they are not implied by law but arise from special circumstances, in which case, whether direct or indirect (circumstantial), they are special damages and must be specially pleaded or alleged to be recovered; and the ultimate reason for the different character of pleading required with respect to general and special damages, respectively, is, to prevent a surprise on the defendant and to enable the latter to properly prepare his defense. The application of this reason affords the fundamental test, and not the inquiry of whether the damages are direct or indirect (consequential).

As said by Hale on Dam., p. 223, cited by counsel for appellee, quoting from Chitty on Pl.: "Special damages are such as really took place and are not implied by law * * *" Again, the same author quotes from same authority in reference to its not being necessary to state descriptions of general damages in the declaration, "because presumptions of law are not in general to be pleaded or averred as facts." and proceeds with the quotation: " 'But where the law does not necessarily imply that the plaintiff sustained the damages by the act complained of, it is essential to the validity of the declaration that the resulting damage should be shown with particularity. * * * And whenever the damages sustained are not necessarily accrued from the act complained of, and consequently are not implied by law, then, in order to prevent surprise on the defendant, which might otherwise ensue at the trial, the plaintiff must, in general, state the particular damage which he has sustained, or he will not be permitted to give evidence of it.' "

We reach the conclusion, therefore, both on principle and upon authority, that damages arising upon the breach of

a contract in a case falling under the third rule in *Hadley* v. *Baxendale* may be both direct and indirect (consequential) damages. Those which proceed immediately (causatively) from the loss of the thing contracted for without the intervention of any intermediate cause, are direct damages. Those, if any, which do not proceed immediately (causatively) from the loss of the thing contracted for, but from such loss setting in motion an intermediate cause or causes from which latter the losses directly result, are indirect (consequential) damages; as would be also many other possible occurrences of damages which might have arisen under the contract in the instant case, which so far as we know have not arisen, or, at least, are not involved in the suit before us, but for which paintiff was exempted from any liability by the clause in the contract with respect to "consequential" (indirect) damages.

Now what is an "intermediate" cause, such as referred to in the next preceding paragraph, in a case of a breach of a contract?

Manifestly it is a cause extrinsic to the contract when the latter is construed in the light of all the surrounding circumstances—in the light of the special circumstances of which the vendor has notice at the time of the making of the contract; that is to say, it is a cause of which such special circumstances gave the vendor no notice.

Coming now more specifically to the case at bar, the question is—

Did the damages claimed by plaintiff in error, defendant in the court below (hereinafter referred to as defendant), as to which the evidence tendered was excluded by the trial court, proceed from the operation of a cause or causes of which the vendor (the plaintiff) did not have notice at the time of the making of the contract, or immediately (causatively) from a cause or causes of which the vendor had notice?

It is, of course, not intended to conclude what the facts really are or might prove to be; but, assuming, as we must, upon the consideration of the admissibility of such evidence, that the statements accompanying the tender of such evidence would have been sustained by the proof, it appears that the items of damages claimed by defendant proceeded directly from a cause or causes of which the plaintiff had notice at the time of the making of the contract. Counsel for plaintiff, in the brief filed February 26, 1915, state: "Each and every one of these items grew out of the fact that the plaintiff in error had leased from the Southern Railway Company the Bluemont division of its road and had covenanted to take over and operate the same on the 1st of July, 1912." The plaintiff in the court below had notice of this lease at the time of the making of the contract in question and of the pertinent provisions of such lease. Such counsel then takes the position that: "When the contract was entered into, it is clear that the possibility of such damages arising was in the minds of the parties, but that the defendant in error was unwilling to enter into the contract which it did and incur a liability for damages growing out of these peculiar circumstances * * * determined to protect itself against such damages by contract * * *" and hence, "It provided in the contract that it should not be held responsible or liable in any event for consequential damages." Counsel for plaintiff add: "But for this provision in the contract it seems unquestioned that the defendant in error would be liable for the off-sets in the bill of particulars, and because of this contract provision it is clear that it is not liable for these consequential damages."

Counsel for plaintiff, it is very true, contend that such damages were not direct, but indirect (consequential) damages; but it is not claimed that they were so because they proceeded from the operation of a cause or causes of which the plaintiff did not have notice at the time of the making

of the contract. This is in effect admitted. (Of course, upon the assumption that the statements accompanying the tender of the evidence in question would have been sustained by the proof.) The position that such damages are consequential and not direct, is based upon the contention that *all damages arising from special circumstances* are indirect (consequential) although the vendor has notice of such circumstances as aforesaid. This position has been considered above and found untenable, on principle and upon authority, as there set forth.

The conclusion, therefore, seems inevitable from the case as made by the statement accompanying said evidence, that the damages in question did not proceed from the operation of a cause of which the vendor (the plaintiff) did not have notice as aforesaid; but immediately from the said cause of which the debtor had notice.

Hence the further conclusions are inevitable (predicating that the statements accompanying the evidence aforesaid would be sustained by the proof) that the damages in question are direct damages not indirect (consequential) damages; and that the provision in the contract exempting the plaintiff "in any event, from consequential damages" does not protect it from liability for the damages claimed by defendant in this case.

The provision referred to in the contract would operate upon and exempt the plaintiff from liability for all damages arising from intermediate causes set in operation by the said cause of which the plaintiff had notice, from which intermediate causes losses directly result, and from other indirect (consequential) damages such as might result from many other possible occurrences, as indicated above. But the case before us does not present one in which any such indirect (consequential) damages are sought to be recovered.

That is to say, the application of the foregoing authorities to the instant case produces the following resultant conclusion:

The contract in the instant case impliedly contained—and it must be read and construed as if it in fact expressly contained, written into it—the special circumstances referred to in the statement accompanying the tender of the excluded testimony. Hence, all damages which arose from a breach of such contract, which were the result of losses which proceeded immediately (causatively) from such circumstances without any intermediate cause, were the direct result of a breach of this very contract and direct and not consequential (indirect) damages.

The term "consequential" (indirect), used in the exemption clause of the contract referred to, is not broad enough in its meaning to cover direct, as well as indirect, damages arising from delay in delivery of the goods sold—which, indeed, counsel for plaintiff admit; but the exemption which plaintiff now claims it sought for itself by the use of this term in the contract amounts to this in effect. Even plaintiff, it is to be noted, cannot bring itself to make the claim of this exemption except indirectly, by the use of the contention that it is not seeking exemption under such term from *direct damages* for such breach of its contract. It can but admit that such term was not used with the intention of exempting it from such direct damages. Hence, plaintiff admits, in effect, that it did not even propose to use in the contract the term in question with such meaning, although the effect of giving the construction to the contract for which it now contends would be to give such term that meaning. And, on the side of the defendant, it is manifest, in view of the statement accompanying the tender of the excluded evidence, that if such meaning had been expressed in the drafts of the contract so as to have been so understood by defendant, it would not have been signed by it.

In this situation the court would be making for the parties a contract different from that in fact made by them if it gave to the term "consequential" the effect now sought to be given it by the plaintiff. Aside from all consideration of the accurate technical meaning of the phrase "consequential damages" is this fundamental and unsurmountable difficulty, which lies in the way of the construction of the contract for which counsel for appellee contend, and which is given it in the majority opinion of the court.

## *The Measure of the Damages.*

Many authorities have been cited and relied on by counsel for defendant and plaintiff with respect to the proper measure of damages in the case at bar; whether the evidence rejected by the trial court was admissible as bearing upon the proper measure of damages in such case.

As we have seen, where the damages are direct, they may always be recovered. In such case they are certain in respect to the cause from which they proceed. But there is another rule as to certitude not laid down in the noted case of *Hadley* v. *Baxendale,* which is essential to the recovery, even of direct damages, as well as of proximate indirect damages, namely, they must be proved with reasonable certainty. *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875; *Bristol Ry. Co.* v. *Bullock, &c. Co.,* 101 Va. 652, 44 S. E. 892. And "the law adopts that mode of estimating the damages which is most definite and certain" in the particular case. *Griffin* v. *Colver,* 16 N. Y. 489, 69 Am. Dec. 718. The party injured "must do the best he can," "what he reasonably can," to avoid the injurious consequences under the circumstances in which he is placed. Hale on Dam., pp. 64-6-8-9. In case of delayed delivery, if there is a market in which the vendee can supply the loss of the thing contracted for, he should avail himself of it, and whether he does so or not, the dif-

ference between the market value and that contracted for, is the measure of damages; but when there is no market value, this rule has no application. *Trigg, &c.* v. *Clay,* 86 Va. 330, 13 S. E. 434, 29 Am. St. Rep. 723; Sedg. Dam., p. 281; Sutherland Dam., sec. 46. Where there is no such market value and the vendor at time of contract has actual or implied notice of this fact, the vendee may recover lost profits if proved with reasonable certainty. *Richardson* v. *Chynoweth,* 26 Wis. 656; *Weston* v. *Boston Railroad,* 190 Mass. 298, 76 N. E. 1050, 4 L. R. A. (N. S.) 569, 112 Am. St. Rep. 330, 5 Ann. Cas. 825; *Greberi-Borguis* v. *Nugent,* L. R. 15 Q. B. 85, 89; *Griffin* v. *Colver,* 16 N. Y. 489, 69 Am. Dec. 718; *Gagnan* v. *Sperry, &c.,* 206 Mass. 547, 92 N. E. 761; *Consumers Ice Co.* v. *Jennings,* 100 Va. 719, 42 S. E. 879; *Perry Tie Co.* v. *Reynolds,* 100 Va. 264, 269-70, 40 S. E. 919; *Burruss* v. *Hines, supra.* Lost profits or lost gains are as recoverable as any other loss, if proved with reasonable certainty. "While a plaintiff is deprived of use of property valuable for use, and the property is something that can be replaced, his damages are the expenses of hiring property which he is forced to substitute for it." *Weston* v. *Railroad Co., supra.* It is true that the holding just quoted was not necessary for the decision of that case, but it is manifestly sound in principle as applicable to a situation where a hiring is the best course which the vendee can "reasonably" pursue, to minimize the loss under the circumstances in which he is placed. There are cases where the "real value" or "true value" is the measure of damages, there being no market value, as in *Loesch* v. *Koehler,* 144 Ind. 278, 41 N. E. 326, 43 S. E. 129, 35 L. R. A. 682-4, where there was no market value for the plaintiff's horses which were killed, but they had a real or true value for the particular use to which he could have put them. Such a measure of damages is properly resorted to where it is the "most definite and certain" which is applicable to the case

in hand. It could have no proper application in the case at bar.

The evidence rejected by the court below should have been admitted as tending to prove the damages claimed by appellant.

It is not intended to be said that such evidence was sufficient to prove such damages "with reasonable certainty." There are manifestly some elements entering into the question which are absent from the items of the bill of particulars on their face; such as the expense which defendant would have had to bear had it been able to use the motive power intended and it had not been forced to use steam motive power instead. (See *Bristol Ry. Co.* v. *Bullock, &c. Co., supra.*) But this and the like matters of fact, affecting the certainty and definiteness of the proof of the damages so as to entitle the defendant to have them allowed as a set-off, are matters which would be developed in a trial of the case on its merits.

I think, therefore, that the evidence excluded by the court below should have been admitted, and for the reasons given above I cannot concur in that part of the opinion of the majority of the court which holds to the contrary.

I concur in the conclusion of that part of the majority opinion which reverses the case on the ruling of the court below on the subject of interest, as the instant case is one "founded on" the contract and is not an action on the contract itself; but not in its affirmance of the judgment of the court below should the plaintiff submit to the terms stipulated in such opinion with respect to relinquishment of interest.

This being a dissenting opinion, it would serve no good purpose to deal therein with question "I" not passed upon in the majority opinion.

*Reversed in part.*