## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

Bristol Belt Line Railway Co. v. Bullock Electric Manu-
facturing Co.

June 25, 1903.

1. PLEADING—*Decision by Court Without Jury—Rule of Decision in Ap-
pellate Court.*—Where the whole matter of law and fact in an action
has been submitted to the trial court, without the intervention of
a jury, and its judgment is excepted to as contrary to the evidence,
and the evidence (and not the facts) is certified, the judgment
stands upon the same footing as the verdict of a jury rendered upon
the evidence, without instructions, and the rule of decision in this
court, in considering the evidence, under the express terms of sec-
tion 3484 of the Code, is "as on a demurrer to the evidence by the
appellant."

2. PLEADING—*Damages as Set-Off—Burden of Proof.*—A defendant who
claims damages by way of set-off to the plaintiff's demand occupies
the attitude of a plaintiff, and must either prove directly the items
of damage claimed, or establish facts from which the court can de-
duce, with reasonable certainty, the amount of damage sustained.

3. DAMAGES—*Loss of Profits—When Recoverable—Case at Bar.*—Loss of
profits resulting from a breach of contract may be recovered when
they are the natural result, in the contemplation of the parties, of
the breach, and can be proved with reasonable certainty. In the
case at bar the evidence falls short of this requirement. Even if
it be conceded that the gross receipts of the electric railway com-
pany were ascertained with sufficient certainty, the net profits can-
not be ascertained by simply deducting from the gross receipts the
bill for fuel, and an estimate of the cost of the skilled labor em-
ployed.

Error to a judgment of the Corporation Court of the city of Bristol, rendered January 15, 1903, in an action of assumpsit, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*J. H. Winston, Roberts & Roberts,* and *Curtin & Shelton,* for the plaintiff in error.

*Bullitt, Kelly & Hull* and *Morrison R. Waite,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The Bristol Belt Line Railway Company purchased of the Bullock Electric Manufacturing Company a standard Bullock railway generator, and certain other electrical appliances, to be used upon its line of railway in the city of Bristol. The terms of the purchase are stated in a letter from Lozier, district manager of the Bullock Company, to Dulaney, vice-president of the Belt Line Company, dated New York, March 2, 1901. After describing the machine which was to be furnished, the letter continues:

"We expect to make shipment of this generator within fifteen days, and will ship it via L. & N. and Southwestern R. R.

"We will deliver the above, f. o. b., Cincinnati, for the sum of one thousand seven hundred and twenty dollars ($1,720).

## TERMS.

"50 per cent. by sight draft attached to B—L.

"Balance by four (4) months' note bearing interest, with acceptable endorsement.

"We wish to thank you for having placed this order with us,

and beg to advise you that the same will receive our very best attention.

Yours very truly,

"BULLOCK ELECTRIC MFG. CO.,
"ROBERT T. LOZIER, *District Manager*.

"The above proposition is hereby accepted this day of May 2, 1901.

"B. L. DULANEY, V. P.,
"BRISTOL BELT LINE RY. CO."

At the foot of the letter head upon which the foregoing was written, the following appears in red ink:

"All contracts subject to strikes and other delays beyond our control."

From causes which need not be mentioned, there was considerable delay in shipping the machinery ordered, and it was not actually put on board the cars until June 13th, and was not received for some days thereafter.

On the 19th of July, 1901, the Bristol Belt Line Company sent a check to the Bullock Electric Manufacturing Company for $830.13, being one-half the price of the generator, less certain small items of offset which it claimed. On July 26, the Bullock Company acknowledged receipt of this check, and, referring to the items of set-off, asked for an explanation with respect to them. There was more or less correspondence between the two companies until some time in December, when, efforts to reach a satisfactory adjustment of the points of difference between them having failed, the Bullock Electric Manufacturing Company brought an action of assumpsit against the Bristol Belt Line Railway Company in the Corporation Court of the city of Bristol. Its bill of particulars embraces the price of the generator, $1,720, and two items for other machinery, the whole account aggregating $1,788.25, which, credited by

$830.13, leaves a balance of $958.12 as the balance for which it sued.

To this action the Belt Line Company pleaded non-assumpsit and set-off. In its plea of set-off, it states the purchase of the machinery, the part payment of the price by check, and then avers that the plaintiff did not keep its promise and undertaking with the defendant, in this: that the generator and other appliances were not delivered to the defendant on or before the 15th of May, 1901, although the plaintiff was notified of the importance thereof at the time the order was given, and undertook faithfully so to do, but, on the contrary, the generator and appliances were not delivered until long thereafter, and then not as a whole, but in parts, at different times, over a period of several weeks; and the defendant avers that, by reason of the breaches aforesaid of the plaintiff, the defendant was unable to operate its plant for several weeks, during a portion of the best season of the year, and was otherwise put to much damage and expense, and that, by reason of the promise aforesaid, it has sustained damage amounting to the sum of $1,152.85, which is still unpaid and due from the plaintiff to the defendant.

Issues being joined upon the pleas, the whole matter of law and fact was submitted to the court, which gave judgment for the plaintiff for the amount of its claim, subject to certain small payments set forth in its order, but rejecting the principal item of set-off relied on by the defendant. To that judgment the defendant obtained a writ of error.

The sole question is one of fact. The case stands before us as though it had been submitted to the jury without instructions, and a verdict had been rendered upon the evidence. It is our duty, under section 3484 of the Code, to consider the evidence in the case "as on a demurrer to the evidence by the appellant;" and, if we shall be of opinion that the judgment of the Circuit Court is erroneous, we are required by section 3485 of the Code "to enter such judgment, decree or order as the

court whose error is sought to be corrected ought to have entered."

The petition of plaintiff in error, after reviewing many authorities upon the subject, deduces the following conclusion from them: "Loss of profits may be recovered as an element of damage for breach of contract where the same are the natural result, in the legal contemplation of the parties, of the breach, and when proved with reasonable certainty; and in estimating damages the law uniformly adopts that mode which is most definite and certain, taking into consideration the peculiar circumstances surrounding each case."

Conceding that the plea of set-off shows a loss of profits, such as may be recovered in accordance with the terms of the law as above stated, it still remains for us to inquire whether the amount of damage has been proved with reasonable certainty.

The Belt Line Company operates an electric railway in the city of Bristol, which contains about 12,000 inhabitants. It purchased machinery to be delivered on the 15th day of May. The delivery was delayed, and by that delay it claims that it suffered damages, which it now seeks to set off against the purchase price of the machinery. The proof offered to maintain this plea is the number of fares received by the road on five consecutive days in May, immediately preceding the suspension of traffic, and on eight consecutive days in June, from the 23d to the 30th, inclusive, after its operations had been resumed. During those thirteen days the evidence tends to show that the Belt Line Company received in fares $449.15. We are asked to assume that its gross receipts during the period of suspension would have been an average of the receipts during the thirteen days. This, to start with, is a somewhat uncertain basis for arriving at gross receipts; but, granting that a reasonable certainty may be attained from such data with respect to the gross receipts, how are we to ascertain how much is to be deducted on account of running expenses? The bill for fuel is

given, and an estimate of the cost of the skilled labor employed, but profits are not to be arrived at by deducting these items from the gross receipts. There are many other charges incident to the operation of an electric railway which must be deducted from gross receipts in order to ascertain the profits in the business, with respect to which the evidence affords us no means of making an estimate. We are not permitted to indulge in conjecture, but it was the duty of the Belt Line Company, which, with respect to the set-off, occupied the attitude of a plaintiff, to fix the amount of recovery by evidence which would show either directly the items of damage which it sustained, or establish facts from which the court could deduce with reasonable certainty the amount of such damages.

We think it highly probable that plaintiff in error sustained damage for which it ought to be compensated, and we regret that the proof is too speculative and conjectural to enable us to fix with a sufficient degree of certainty upon a definite sum as the amount of the damage sustained.

We are of opinion that the judgment of the Corporation Court must be affirmed.

*Affirmed.*