# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

Pond's Administratrix v. Norfolk and Western Railway
Company.

January 12, 1911.

Absent, Cardwell, J.

1. Negligence—*Emergency.*—In a sudden emergency one cannot be
   required to adopt the wisest possible action to avert an acci-
   dent.

2. Negligence—*Last Clear Chance—Case at Bar.*—The doctrine of the
   defendant's "last clear chance" to have avoided an accident, not-
   withstanding the plaintiff's contributory negligence, has no ap-
   plication, where, as in the case at bar, defendant's servants did
   all that could have been reasonably expected to avert the acci-
   dent, as soon as plaintiff's peril was discovered.

3. Railroads—*Establishment of Rules—Violation of Rules Causing
   Injury to Employee.*—Under the law a railroad company is
   bound to establish rules for the orderly conduct of its business,
   and it would be a harsh measure of justice to hold a company
   responsible on the one hand for failure to prescribe rules, and
   on the other to refuse to protect it from the consequences of
   the violation of reasonable and proper rules, adopted and pro-
   mulgated in discharge of the duty imposed by law.

4. Railroads—*Negligence—Open Switch—Violation of Rules by En-
   gineman—Proximate Cause.*—Although a switchman was negli-
   gent in leaving a switch open, if an engineman, in contraven-
   tion of a general rule of the company and of a special cau-
   tionary bulletin delivered to him, fails to keep his engine under
   control while running through a yard with which he is per-
   fectly familiar, and runs his engine at a high rate of speed
   through the yard and into the open switch causing a collision
   with other cars on the track and resulting in his death, his
   disregard of the imperative rules of the company, and not the
   open switch, is the sole proximate caust of his death, and there
   can be no recovery by his administrator.

Error to a judgment of the Circuit Court of Nottoway county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*R. G. Southall* and *Coke & Pickrell,* for the plaintiff in error.

*F. S. Kirkpatrick, Marshall McCormick,* and *Theodore W. Reath,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought by the administratrix of John Pond to recover damages of the Norfolk and Western Railway Company for the death of her intestate, which is alleged to have been caused by the negligence of the defendant company. There was a demurrer to the evidence by the railway company, which was sustained by the circuit court, and judgment rendered for the defendant.

It appears from the record that the plaintiff's intestate was an engineer in the service of the defendant company, and was, at the time of his death, running on passenger train No. 6. On the morning of March 24. 1907, he left Roanoke with his train, reaching Crewe, the point of the accident, about 12:24 P. M. Large yards of the company are located at Crewe, and the deceased entered these yards at a high rate of speed and ran into an open switch, thereby coming into collision with a shifting engine and cars attached, in which collision he was killed. The switchman had left the switch open under the mistaken impression that another freight train was coming before passenger train No. 6.

The company concedes that the switchman was negligent.

in leaving the switch open, but it insists that the proximate
cause of the accident was the reckless disobedience by the en-
gineer of the positive rules of the company upon entering and
running through the yard limits. The plaintiff in error con-
tends that the open switch was the proximate cause of the
death of her intestate; and further insists that the defendant
railway company failed to avail itself of the last clear chance
to avoid the accident.

Assuming for the present the negligence of the deceased in
running passenger train No. 6 through the yards, we will
consider first the proposition, that there was a last clear chance
to avoid the accident, of which the railway company failed to
avail itself. The record shows that, like most accidents of
this kind, it was unexpected and sudden, those attempting to
avert the accident having to act in the face of an alarming
emergency. It is insisted that Ward, the switchman, was noti-
fied by the yard conductor of the open switch and coming
passenger train when it was within three hundred yards of the
switch, and that he did not have the yard engine removed,
which could have been done after he saw the danger. The
evidence does not support this contention. Ward, who is the
plaintiff's witness, testifies that he was in the switch box about
sixty yards east of the switch when notified by the yard con-
ductor of the open switch and coming passenger train; that
he realized what was going to happen, and put out every
nerve that was in him, and ran to the switch, waiving the
coming train down with his hat the whole time he was going;
that as he put his hand on the lever to throw the switch it was
struck by the pony truck and the consummation of his pur-
pose defeated.

It is clear that but for the negligence of the deceased engi-
neer in not having his train under control, Ward's prompt
action would have resulted in preventing the accident. There
is no evidence in support of the contention that Ward could
have run to the switch engine in time to move it out of the

way; on the contrary, the evidence shows that in view of the speed of the passenger train he would not have had time to accomplish anything in that direction.

In an emergency such as this, one cannot be required to adopt the wisest possible action to avert an accident. *Wise Terminal Co.* v. *McCormick*, 104 Va. 400, 51 S. E. 731. It was natural that Ward's first thought should have been to make with all possible speed, as he did, for his post of duty where he could save the situation if the engineer had his train under control.

It is further contended that the yard conductor and engineman saw the train approaching and saw the switch open, and that after they saw the danger and saw that the engineman on the approaching passenger train was trying to stop his engine, they could have put the yard engine, which was fired up, in motion and gone east, thereby avoiding the collision. The only evidence referred to in the petition in support of this contention is that of H. C. Page, the train dispatcher, a witness introduced on behalf of the company. We have examined carefully the testimony of this witness, and fail to find that it even tends to prove the position asserted. He does not refer to the position or movements of the engine which was switching in the yard and with which the deceased collided, nor does he mention the yard conductor or the yard engineman, or say what they saw, or that they could have done anything to avoid the accident. The record contains no evidence on this subject, except that of the plaintiff's witness, E. T. Ward, who says, in substance, that he supposes the yard engine was switching when No. 6 struck it, but does not know whether it was going forward or backward. It was shifting on a track called the lead at the time of the accident, headed east, and the box cars which it was shifting were in front of it.

We do not know from this evidence whether the yard engine was moving in the same or the opposite direction from the rapidly approaching passenger train, or whether it was

standing still, or any of the details necessary to determine whether the situation was such that the yard conductor or engineman could have moved the yard engine, and whatever burden of freight cars it had, in time to have escaped the rapidly approaching passenger train, the speed of which was, according to the testimony of the witness who makes the lowest estimate, twenty-five miles an hour.

In support of the contention that the doctrine of the "last clear chance" was applicable to this case, the plaintiff in error relies upon the case of *N. & W. Railway* v. *Spencer*, 104 Va. 657. 52 S. E. 310. In order to distinguish that case from the case at bar it is only necessary to quote from the opinion the statement of facts upon which the doctrine was therein held to be appropriate: "The work train was standing in a cut, about 225 feet south of bridge 1813, when the engineer in charge called in his flagman. The evidence tends to show that when the flagman, in response to the call, reached the engine of the work train he 'hollered' to the engineer and said, 'For God's sake get out of here, there is a train coming down the mountain;' that the engineer did not move his engine and the flagman made no effort to stop the coming train; that the engineer had time, after the warning given by the flagman, to have run his train back as far as the middle of the bridge, thus putting a distance of 332 feet between the two trains, with the view unobstructed, and both trains going in the same direction; and that if the engineer of the work train had moved back promptly upon receiving notice of the coming freight train no collision could have occurred." Here, the flagman and the engineer of the standing work train had warning of the apapproach of the other train in time to have avoided the collision, but neither of them turned a hand to avoid the accident. The case furnishes no support to the case presented by the record now before us.

In the case at bar, there is no evidence to sustain the theory that after the danger was discovered there was an interven-

ing space of time and an opportunity for the defendant company to have avoided the accident, and thereby have saved the plaintiff's intestate from injury. On the contrary, it satisfactorily appears, that when the peril was discovered all concerned did all that could have been reasonably expected to avert the accident. We are of opinion that the doctrine of a defendant's liability notwithstanding the plaintiff's contributory negligence, if the defendant could have avoided the plaintiff's negligence after it was discovered, has no place under the evidence in this case.

We come now to consider the contention of the defendant company that the contributory negligence of the plaintiff's intestate was the sole proximate cause of his death; which negligence consisted of his alleged disobedience of the company's rules in entering and running through the yards of the company at Crewe, where the accident occurred.

The record shows that the deceased had been in the service of the defendant for some years and was familiar with the yards at Crewe, through which he passed practically every day. He was required to be familiar with the rules of the company, and there is no contention that he was not. One of the rules of the company, No. 102-a, provides, that "*When within yard limits, trains must run with great care and under the control of the engineman.*" In addition to this rule, the deceased had received a special bulletin pointedly calling his attention to the danger of accidents in yards, which says: "It does not follow that because such engine gets the white at fixed signal, that the track or way is necessarily clear and that the engineman is thereby relieved of all responsibility; he is required to run carefully and under control notwithstanding such signal, so that if the track is obstructed he may prevent accident. * * * * I am afraid that too much dependence is being put in the signal, and that engines and trains are entering the yard too fast and not under the control prescribed by rule 102-a. I do not mean to relieve the signal or switch

tender of responsibility for turning a train in a blocked track without notice, but I want to have you take the precaution that will prevent accident in case he does so, and if you will follow rule 102-a, and proceed expecting to find the track obstructed instead of clear, you will accomplish this. * * * * The only reason for having rule 102-a at all is to require trains moving in yards to proceed expecting to find obstructions and to be able to stop before accident occurs." This strong and urgent appeal of the defendant for the observance by its enginemen of rule 102-a was put into the hands of the deceased something more than one year before the happening of the accident here involved. "Under control," as prescribed by rule 102-a, is shown to mean, that the engineman should have his train under such control as to be able to stop within vision, that is as far as he could see any object that should get in the way. From the point where the deceased entered the yards to the point of the accident was one mile. The evidence shows that throughout this distance the deceased was running at the minimum rate of twenty-five miles an hour; the plaintiff's witness, Ward, putting the speed at fifty miles an hour. The rate of speed, however, is not the determining feature, but the question: Was the train under the engineer's control, or rather could he have stopped it at any time within the line of his vision, while inside the yard limits?

Without reciting the evidence in detail, it is sufficient to say that it abundantly appears that the train was not under control, but was moving at such a rate that it could not have been stopped within the line of the engineer's vision; and that, if it had been under such control, the accident would not have happened. The record shows that the danger signal was out at the switch, and that when the peril was discovered a number (at least four), of the employees of the company at once ran in the direction of the approaching passenger train, waiving it down with their hats. The weight of evidence in the case is that the danger signal can be seen at a distance of

1,200 feet, but a witness for the plaintiff testifies that at a distance of 120 yards he could only see the bottom of the staff of the signal but could not see the signal; that at 90 yards he could begin to discover the paddle at the top of the staff pole, and then to distinguish the color of it. Assuming that the deceased from his engine, and with his training, could have seen the signal for no greater distance than this witness, he was still guilty of contributory negligence. He had travelled this road every day for a number of years. He knew that there was a signal within the company's yard at Crewe, and that it was his duty to run his train at such a speed that he could have checked its motion within vision. And if it be true that, like the witness, Watson, he could not see the signal until within 85 or 90 yards, and he ran his train at a rate that he could not stop within 85 or 90 yards, he violated rules which he had agreed to respect, and which were made for his safety and the safety of those he had in his care.

Rule No. 27 of the company provides, that "*A signal imperfectly displayed or the absence of a signal at a place where a signal is usually shown, must be regarded as a stop signal, and the fact reported to the superintendent.*"

If the deceased did not see the danger signal, or saw an imperfectly displayed signal at this place, where a signal was always shown, it was his duty under rule 27 to stop and report the fact to the superintendent. Under the law a railroad company is bound to establish rules for the orderly conduct of its business, and "it would be a harsh measure of justice to hold a company responsible on the one hand for failure to prescribe rules, and on the other hand to refuse to protect it from the consequences of the violation of reasonable and proper rules, adopted and promulgated in discharge of the duty imposed by law." *N. & W. Ry. Co.* v. *Bondurant,* 107 Va. 515, 526, 59 S. E. 1091, 1095, 122 Am. St. Rep. 867, 15 L. R. A. (N. S.) 443.

The case at bar is, we think, conclusively controlled by the

*Cromer case*, which has been twice in this court—99 Va. 763,
40 S. E. 54, and 101 Va. 667, 44 S. E. 898. If there be any
difference, the case here presented is stronger for the company.
In that case, a westbound passenger train approached Pulaski,
and within the station limits came into collision with some
freight cars which had escaped from the siding upon which
they were standing, and Cromer, the fireman, was killed. In
that case the passenger train was running at thirty miles an
hour, a speed corresponding substantially with that in the case
at bar. There the injury occurred after night fall by running
into an obstruction improperly on the track, while here the
accident occurred in daylight, by running into a switch where
there was a fixed signal which the deceased knew was there. In
the *Cromer case*, the company only relied upon rule 102-a,
whereas here we have the same rule and in addition a special
cautionary bulletin pointing out the imperative necessity for a
strict obedience of the rule, and warning the engineer that the
white at a fixed signal did not necessarily clear the track for
him within yard limits; and there, as here, the evidence shows
that a train is under control when it can be stopped within
vision.

It is inconceivable that the deceased, if he had been keeping
a proper lookout, should have failed to discover the switch
signals, or the absence of such signals, or that he should not
have seen the men running toward him and waving him down
with their hats; all or any of which should have warned him
of danger in time to stop his train if under control.

It may be conceded, however, that the deceased did not see,
as he ought to have seen, any of the warnings put forth to
arrest his attention and stop his train. He certainly knew
that he was within yard limits, and that rule 102-a required
him, while in those limits, to move his train with great care
and under his control. The evidence, the accident itself and
its results, all show that the deceased recklessly disregarded
the imperative requirements of the company, which he had

agreed to observe, and that his disobedience of those rules was the sole proximate cause of his death.

Under such circumstances, the defendant company is not responsible. The judgment complained of must, therefore, be affirmed.

*Affirmed.*