# Richmond.

## ATLANTIC COAST REALTY CO. V. TOWNSEND, EX'OR.

### March 13, 1919.

1. CONTRACTS—*Meetings of Minds—Terms to be Reduced to Writing.*—Where the parties to a contract are fully agreed and regard the contract as complete and binding it is a valid contract, notwithstanding that its terms are thereafter to be reduced to writing.

2. FRAUDS, STATUTE OF—*Interest in Land—Agency or Partnership—Real Estate Brokers.*—Plaintiff, a real estate company, engaged in the business of selling tracts of land for customers by first improving, developing and subdividing the lands and then selling them by lots and small acreage parcels, entered into a verbal contract with defendant's decedent to market a tract of land owned by the decedent in this manner. Under this agreement plaintiff took the exclusive agency for the development of decedent's land, with the exclusive right to sell the property at public auction or at private sale within twelve months thereafter. In consideration for this exclusive right to sell, plaintiff agreed to spend its own money for engineers, laborers, advertising, auctioneers, etc., plaintiff to be reimbursed for such expenditures out of the first proceeds of the sales, decedent then to receive a fixed sum out of the proceeds of the sales, and the residue produced by such sales to be divided equally between plaintiff and the decedent.

   *Held:* That this contract was one of agency and not of partnership; that under it plaintiff acquired the exclusive right of sale for one year, thereby acquiring a pecuniary interest in the sale, but not in the property, for that period, and, therefore, the contract was not one providing for a sale of an interest in real estate and was not required to be in writing under subdivision 6 of section 2840 of the Code of 1904.

3. CONTRACTS—*Construction—Usual Meaning of the Words—Intention of Parties—Contract of Agency or Partnership.*—In construing contracts, words are to be given, primarily, their usual and ordinary meaning, unless a contrary meaning plainly appears and the intention of the parties, if not contrary to law, must be carried out. In the instant case the contract was based upon decedent's proposition, "that the plaintiff take the

exclusive *agency"* right of sale, etc., for a consideration to be provided by the latter; and all the facts and circumstances alleged tend to establish the relationship of principal and agent.

4. AGENCY—*Revocation.*—An agency is effectually revoked when the principal disposes of his interest in the subject matter of the agency in a manner inconsistent with the authority conferred, as by assignment, conveyance, contract of sale, or otherwise. This is a familiar and settled proposition of the law of agency; but it by no means follows that such a revocation can be made by the principal as a matter of right and without liability to his agent. The latter question depends upon the character and terms of the agent's contract.

5. AGENCY—*Revocation—Liability to Agent.*—When an agency is not such as to constitute what in legal parlance is called a power coupled with an interest, and no third party's rights are involved, the agency, so long as it remains unexecuted, may be effectually revoked at the will of the principal, but a wrongful revocation will nevertheless render him liable in damages to his agent. In other words, the agency may always be revoked, but the contract of employment will not necessarily be thereby rescinded.

6. AGENCY—*Revocation—Real Estate Brokers—Case at Bar.*—In the instant case the brokerage company's agreement to furnish the money for the development and subdivision of the land, and for the expenses of the sales, was a valuable consideration for the agreement that the brokerage company should have the exclusive right of sale for a year. And, while the agency was not coupled with such an interest as to make it irrevocable, the contract which created it was a mutual agreement between competent parties for a lawful purpose and upon a valuable consideration, with the result that neither party could violate it without becoming responsible to the other for the breach.

7. REAL ESTATE BROKERS—*Revocation of Authority.*—Where a time is fixed for performance by the broker, a number of considerations arise. If all that the negotiations amount to is an *offer* by the principal that he will pay a commission if a purchaser be found within a certain time, the offer will only be accepted and ripen into a contract by the finding of a purchaser within that time. At any time before that event, the offer may be withdrawn by the principal. But if what the negotiations amount to is a *contract* of employment for the fixed period, or a binding *contract* that a commission will be paid if a purchaser is found within that time, the broker will usually be entitled to damages in the first case, and, usually, to the

amount of his commissions in the second, if he finds a purchaser within that period, although the principal may, in the meantime, have sold the property or withdrawn it from sale.

8. DAMAGES—*Profits—Real Estate Brokers.*—In the instant case, the plaintiff bought from the defendant's decedent the exclusive right to sell the property, for a period of one year. The sole purpose of the contract was the acquisition of a profit. While there is more or less uncertainty and confusion in the authorities upon the general subject of profits as an element of damages in suits for breach of contracts, it is safe to say that when contemplated profits constitute the sole purpose and object of the contract, and the plaintiff alleges a breach and a consequent loss of profits he has stated a *prima facie* case, and is entitled to recover such amount as he can prove, with reasonable certainty, he would have made but for the breach.

9. DAMAGES— *Profits* — *Real Estate Brokers.* — The general statement of law contained in the preceding syllabus is subject to the general qualification that if the declaration should allege such a state of facts as would enable the court to say that no profits at all could be proved, a demurrer would end the case. But when the profits claimed may reasonably, or, as in the instant case, must necessarily, be presumed to have been within the intent and mutual contemplation of the parties when the contract was made, the mere fact that the exact amount cannot be calculated with mathematical certainty does not preclude a recovery.

10. DAMAGES—*Profits—Real Estate Brokers—Case at Bar.*—In the instant case the plaintiff sued for loss of profits which he alleged he would have realized if there had been no breach of the contract. Such profits having been the purpose of the contract, and mutually contemplated by the parties, and the circumstances alleged tending clearly to show that the same to some extent would have been realized, he is entitled to go to the jury with his case, and to recover such amount as his proof will establish with reasonable certainty.

11. DAMAGES—*Profits—Real Estate Brokers—Case at Bar.*—In the instant case, the declaration was demurred to on the ground "that the damages sought to be recovered are profits which would have been realized from a business or enterprise never established; such damages cannot be measured and hence cannot be recovered."

   *Held:* That the demurrer should have been overruled, as the commodity dealt in was a tract of land; plaintiff's business had been successfully established for years, and defendant's decedent demonstrated the existence of a market by selling the property at a large profit over what he was to have as a minimum in his contract with the realty company.

12. REAL ESTATE BROKERS—*Exclusive Right to Sell—Sale of Property by Principal.*—A principal cannot, after having made a valid contract with an agent for the exclusive right to sell, render performance on the part of the agent impossible by making the sale himself, and then successfully defend an action for breach of the contract by claiming that the agent might not have made the sale.

Error to a judgment of the Hustings Court of city of Petersburg, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Lassiter & Drewry* and *Mann & Tyler,* for the plaintiff in error.

*Mann & Townsend* and *C. V. Meredith,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This writ of error calls in question a judgment of the Hustings Court of the city of Petersburg sustaining a demurrer to a declaration in an action of assumpsit, wherein the Atlantic Coast Realty Company was plaintiff and J. M. Townsend, executor of Wirt Robertson, deceased, was defendant.

The allegations of the declaration were as follows:

That the plaintiff had for many years been engaged in the business of selling tracts of land for customers by first improving, developing and sub-dividing the lands into building lots and small acreage parcels, so as to make the same more valuable and salable; that such sales were made by it both at public auction and private sale, and upon contracts with the owners for the exclusive right to sell, and, for compensation to be measured either by commissions or a fixed

portion of profits over and above an agreed valuation of the land to be sold; that the defendant's decedent, Wirt Robertson, was the owner of 418 acres of land, called the "Baker Property," so situated as to be peculiarly well adapted to profitable sub-division and sale under plaintiff's method of making sales; that on September 9, 1915, "the said Wirt Robertson made a contract with the plaintiff through a certain W. E. Burke, who was then, and is now, one of the agents of said plaintiff, authorized and empowered by it to enter into contracts on its behalf; that the said Wirt Robertson, in substance and effect, stated that he was familiar with the methods of business of said plaintiff, that he had followed its recent sales made in the neighborhood of the said "Baker Property," that he knew the said plaintiff had acquired an interest in another piece of land called the "Buren Property" situated near the said "Baker Property," that he was afraid said plaintiff would sub-divide and sell said "Buren Property" before he could organize a sale of the "Baker Property;" that he wanted the said plaintiff to acquire a pecuniary interest in the sale of the said "Baker Property," so that it would be just as vitally interested therein as he was, that he was unwilling to spend any money for development purposes, and proposed that said plaintiff take the exclusive agency for the development, subdivision and handling, together with the exclusive right to sell the said "Baker Property" at public auction and at private sale within twelve months thereafter, and in a manner similar to the way in which the plaintiff had handled the Battle Ground addition, which had been sold as was known to said Robertson in lots and parcels upon terms of one-fourth cash and the balance in four, eight and twelve months, with interest at six per cent; the title to the said property to remain in said Wirt Robertson, and to be conveyed by him direct to the purchasers; that it would provide a valuable consideration for this exclusive right to sell, by agreeing

to spend its own money for engineers, laborers, tools, teams, advertising, auctioneers, and other necessary purposes in that connection; that out of the first proceeds of the said sales, said plaintiff be reimbursed for its expenditures, so to be made, upon expense vouchers to be submitted by it to him; that after the payment of said expenses, the said Wirt Robertson should then receive out of the proceeds of said sales the sum of Forty Thousand Dollars ($40,000.00) and that whatever residue might be produced by such sales should be divided equally between said plaintiff and said Wirt Robertson; that said W. E. Burke, agent and contract representative of said plaintiff, as aforesaid, forthwith accepted the said offer so made to him on behalf of said plaintiff, and suggested that he would immediately prepare a written memorandum of agreement embodying said proposition and its acceptance; that said Wirt Robertson replied that he preferred to have a contract drawn up in legal form by his lawyer, which he then and there promised to have done the next day; that said Burke then asked said defendant whether or not said Wirt Robertson understood said offer, and the acceptance thereof by him on behalf of said plaintiff, to be a contract between said Wirt Robertson and the said plaintiff, and said Wirt Robertson then and there replied that he did so understand it, and whereupon the said Burke, agent as aforesaid, and the said Wirt Robertson shook hands in token of agreement; that forthwith said Burke informed J. W. Ferrell, president of the plaintiff corporation, who was then in Greenville, N. C., of the terms of the contract he had just concluded with said Wirt Robertson; that said Ferrell, acting for the said plaintiff and within his authority as its president, proceeded at once to buy a road machine, at a cost of, to-wit: two hundred dollars ($200.00), and to hire additional men to enable the said plaintiff to begin at once to carry out its part of the aforesaid contract and undertaking; that on, to-wit,

the 13th day of September, in the year 1915, said J. W. Ferrell, accompanied by said W. E. Burke, went to the home of the said Wirt Robertson in the county of Chesterfield, near Petersburg, Virginia, for the purpose of executing on behalf of said plaintiff the written memorandum of the contract so entered into which the said Wirt Robertson had promised to have drawn by his lawyer; that when asked whether the papers were ready for signature, said Robertson replied 'No,' and when asked when said papers would be ready, said Robertson replied: 'Gentlemen, I have sold the land;' that said Robertson was then informed by said Ferrell that the plaintiff had given a valuable consideration for the exclusive agency to sell the said 'Baker Property,' and had already begun its part of said contract by spending money for necessary tools and by employing additional men; that said Wirt Robertson, notwithstanding his promises and undertakings aforesaid, then and there refused to perform his part of the said contract, and then and there refused to permit said plaintiff to perform its part of said contract, although the said plaintiff was then and there ready, willing and able to perform the agreements on its part to be done, kept and performed; * *."

The declaration then states that sale by Robertson referred to in the latter part of the foregoing quotation was a sale of the entire property to Chas. S. Barrow for the sum of $80,000; and concludes thus: "and the plaintiff says that the said Wirt Robertson and the said G. Morton Townsend, his executor, have hitherto neglected and refused, and still do neglect and refuse, to pay to the said plaintiff its part of the profits which might, should and would have been derived from the sale of the said 'Baker Property,' had the said plaintiff been permitted to improve, subdivide and sell the same in accordance with the terms of the contract above mentioned; * *"

[1] The defendant demurred to the declaration on four

grounds, which we shall presently take up and dispose of in their order. Before proceeding to do this, however, it may not be amiss to observe that neither of these grounds challenges the validity of the contract on account of the fact that a written memorandum thereof was to be subsequenty executed. It is apparently conceded, as of course it must be under the contract as alleged, that the parties were fully agreed and regarded the contract as complete and binding, notwithstanding that its terms were to be thereafter reduced to writing. (*Boisseau* v. *Fuller*, 96 Va. 45, 30 S. E. 457.)

[2] The first and principal reason assigned for the demurrer was as follows: "It appears upon the face of said declaration that the alleged contract stated therein was one providing for a sale of an interest in real estate, and was not in writing as required by the statute set forth in subdivision 6 of section 2840 of the Code of Virginia."

The statute here invoked, familiarly known as the statute of frauds, provides that no action shall be brought "upon any contract for the sale of real estate, or for the lease thereof for more than a year, unless the * * * contract, * * * or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent."

The leading contention of the defendant, and the chief ground upon which the lower court sustained the demurrer, is that the contract as alleged constituted a partnership between the parties, and thus made the transaction one whereby the plaintiff, instead of becoming merely an agent to sell land for the defendant, became interested as a principal—a joint owner—with the defendant in the real estate to be sold. In no other way, of course, could it be plausibly said that the contract was one "for the sale of real estate" within the meaning of the statute.

To sustain this position, the case of *Burgwyn* v. *Jones*, 113

Va. 511, 75 S. E. 188, 41 L. R. A. (N. S.) 120, Ann. Cas. 1913E, 564, is cited and confidently relied upon; but we think there is a clear distinction between that case and the one at bar. It will be observed that both cases rest upon the allegations of the party seeking to enforce the contract; and the distinction between the two not only appears at once in the respective designations of the contracts involved, but proves, upon analysis of the facts alleged, to be substantial and vital. The bill in the *Burgwyn Case* designates the contract as one of partnership; and the facts as alleged in detail disclose that the complainant was to acquire, not a mere interest in the profits in case of a sale, but an interest in the property itself equal to that of any of the then owners after deducting the cost of the property and the expense of maintaining the same. The prayer of the bill was for an ascertainment and recovery of complainant's share of profits on an undivided half of the land which Jones had already sold, *and for the establishment and protection of his interest in the undivided interest remaining unsold and held in the name of Jones.* In other words, he not only claimed to have acquired an interest in the land itself, by virtue of what he declared to be a partnership agreement, but he alleged facts which if true and evidenced by writing, would have entitled him to an interest in the *corpus* of the estate. This court, therefore, was of opinion "that the verbal agreement set up by the appellant in his pleadings was one providing for the sale of an interest in real estate and within the statute requiring the same to be in writing, and that the circuit court did not err in refusing the relief prayed for and dismissing his bills." The opinion by necessary implication shows that there was room for serious debate as to whether the interest thus claimed to have been acquired in the real estate by virtue of a partnership agreement should be regarded as personal instead of real property, and, therefore, not

within the statute of frauds. But, having decided that question against the complainant, thereby distinguishing the *Burgwyn Case* from the case of *Miller* v. *Ferguson,* 107 Va. 249, 57 S. E. 649, 122 Am. St. Rep. 840, 13 Ann. Cas. 138, the court plainly could not have reached any other conclusion than that the complainant's contract to be enforceable must have been in writing. It was a contract for a partnership in lands which at the time of the partnership were owned by other members of the firm than the complainant; and it was so, not merely because the complainant so named it, but also because his allegations showed that it was such in fact. All Burgwyn lacked was a written contract to enable him to have his interest in the property itself established and protected.

In the case at bar, on the other hand, the plaintiff alleges a contract of agency, claims no interest in the *corpus* of the property, and would clearly be entitled to none, if it did make such claim. If its contract, as it alleges it, had been in writing, no circumstances could have arisen under which it could have made any valid claim to an interest in the real estate itself. It simply bought, for an agreed consideration, the exclusive right of sale for one year, thereby acquiring *"a pecuniary interest in the sale"* (not in the property) for that period. If it had failed to make the sale within that time, it would have received what it bought, and the contract would have been at an end.

[3] It is quite true, as contended, that parties cannot convert what in legal effect is a partnership agreement into a contract of agency merely by calling themselves principal and agent, respectively; but in construing contracts, words are to be given, primarily, their usual and ordinary meaning, unless a contrary meaning plainly appears, and the intention of the parties, if not contrary to law, must be carried out. In this case the contract was based upon defendant's proposition, "that the plaintiff take the ex-

clusive *agency,"* right of sale, etc., for a consideration to be provided by the latter; and all the facts and circumstances alleged tend to establish the relationship of principal and agent. In 1 Mechem on Agency (2d ed.), p. 33, sec. 51, it is said that, "while parties may create a partnership without actually intending that specific result, where they voluntarily enter into an arrangement whose necessary legal effect is the creation of a partnership, courts are reluctant to surprise parties into that relation when they clearly did not intend it." And in *London Assurance Corporation* v. *Drennon,* 116 U. S. 461, 6 Sup. Ct. 442, 29 L. Ed. 688, Mr. Justice Harlan said: "Parties cannot be made to assume the relation of partners, as between themselves, when their purpose is that no partnership shall exist. There is no reason why they may not enter into an agreement whereby one of them shall participate in the profits arising from the management of particular property without becoming a partner with the others, or without his acquiring an interest in the property itself, so as to effect a change of title."

In *Jackson* v. *Haynie's Admr.,* 106 Va. 365, 56 S. E. 148, this court in discussing the constituent elements of a partnership, said: "The principles of the law of partnership lead to the conclusion that if a trader makes an arrangement in regard to a commercial business with another, by reason of which that other becomes interested as owner in the resulting profits, while they are undivided and remain as profits, the two are partners; the general rule being that to constitute a partnership there must be a community of interests *inter sese,* and that the parties should share the profits and losses. It is, however, far from being universally true that a mere participation in the profits constitutes the party a partner. At most it is true only *sub modo.* The same principle that leads to the general rule mentioned leads directly to the other conclusion, that a

mere payment, or promise to pay, out of the profits a sum of money as a specific proportion of the profits does not necessarily constitute the payee a partner, and gives him no interest in the profits and no right to the profits, but only a personal claim for such share of the profits, after they are ascertained and may be divided. If a party has no interest whatsoever in the capital stock, and as between himself and the other party, has no rights as a partner, or no mutuality of powers and duties, but is simply employed as an agent and is to receive a proportion of the profits as a compensation for his labor and services, he will not be deemed a partner from that fact alone. Story on Partnership, section 30, *et seq.;* Parsons on Partnership, page 72, *et seq.* It is clear from the authorities that if the parties merely occupy the relation of principal and agent, or employer and employee, no partnership can be predicated upon the fact that such agent or employee receives a share of the profits as compensation for his services or other benefits conferred. This proposition is illustrated by numerous decisions of the courts. *Bowyer* v. *Anderson,* 2 Leigh (29 Va.) 598; *Chapline* v. *Conant,* 3 W. Va. 507, 100 Am. Dec. 766; *Sodiker* v. *Applegate,* 24 W. Va. 411, 49 Am. Rep. 252; *Berthold* v. *Goldsmith,* 24 How. 542, 16 L. Ed. 762; *Blanchard* v. *Coolidge,* 22 Pick. (Mass.) 151; *Rice* v. *Austin,* 17 Mass. 197; *Loomis* v. *Marshall,* 12 Conn. 69, 30 Am. Dec. 596; *Richardson* v. *Hughitt,* 76 N. Y. 55, 32 Am. Rep. 267.

"In the case at bar the weight of the evidence shows that no partnership was intended by the parties, nor did one result from the verbal understanding between them. It sufficiently appears that the appellee's intestate was employed by the appellant to take charge of his mill as miller, and for his services in that behalf the deceased was to receive one-third of the profits. This interest in the profits, to which Haynie became entitled when they were ready to

be divided, did not make him a partner. It merely constituted the manner of payment and the measure of his compensation for his services as miller."

An action on the contract here involved was first brought in the District Court of the United States for the Western District of Virginia; and, as alleged there, it was the same as stated in the declaration in this case, except that no time was specified for the duration of the agency. The defendant demurred upon the sole ground that the contract was not in writing. The district court sustained the demurrer, basing its judgment upon *Burgwyn* v. *Jones, supra.* Upon appeal to the United States Circuit Court of Appeals, that judgment was reversed, in an opinion by Judge Pritchard, concurred in by Judges Knapp and Woods. See *Atlantic Coast Realty Co.* v. *Robertson,* 240 Fed. 372, 153 C. C. A. 298. After the cause had been remanded to the district court for trial, the plaintiff asked leave to amend the declaration by inserting an averment that the sale was to be made within twelve months from the date of the contract. This leave was denied, and the plaintiff thereupon suffered a non-suit, and instituted this action in the hustings court. Upon the branch of the demurrer now under consideration, the case, as passed upon by the Circuit Court of Appeals, was identical with this one. That court, in the course of a very satisfactory opinion, said: "Thus it will be seen that the *Burgwyn Case, supra,* is not analogous to the case at bar. There the sole purpose of the suit was to ascertain the interest in the tract of land growing out of the partnership between the parties. Also, there was nothing in that case upon which plaintiff could reasonably contend that the agency had been established. * * * * * * *

"For the reasons stated, we are impelled to the conclusion that the contract, as set forth in the complaint, constitutes an agency rather than a partnership, and it neces-

sarily follows that such contract is not required by the laws of Virginia to be in writing."

The first ground of the demurrer is not, in our opinion, well taken.

[4] The second ground was this: "It appears upon the face of said declaration that the alleged contract stated therein was revocable and that it was revoked by the defendant's decedent."

The learned judge of the hustings court, basing his decision solely on the first ground of demurrer, as appears from the written opinion filed with the record, made only a casual reference to the second, evidently leaning to the view, however, that the latter could not be maintained. His comment thereon was: "Of course Robertson had the power to revoke, but it is questionable, if the contract were a valid one, whether he had the right."

No question as to rights of third persons is here involved; and there is no claim that the agency was, in a technical sense, coupled with an interest. Under the facts as alleged in the declaration, it is not denied, and it is clear, that the defendant not only had the power to revoke, but did in fact effectually revoke the agent's authority by making, on his own behalf and independent of the agency, a sale of the subject matter of the contract. In 2 C. J., 554, it is said: "An agency is effectually revoked when the principal disposes of his interest in the subject matter of the agency in a manner inconsistent with the authority conferred, as by assignment, conveyance, contract of sale, or otherwise." This is a familiar and settled proposition of the law of agency; but it by no means follows that such a revocation can be made by the principal as a matter of right and without liability to his agent. The latter question depends upon the character and terms of the agent's contract. Quoting again from 2 C. J., at page 533, the following general and comprehensive statement is peculiarly

germane in this connection: "As between principal and agent, the right to terminate the agency depends upon the ordinary principles of contract, and is governed by the same rules as apply to any other contract of employment. Although, as has been stated, a principal has the undoubted power, so far as the agency is executory, to revoke the agent's authority, it by no means follows that he has always a right to do so, since the contract of agency may provide otherwise. Accordingly, if he revokes the agency in violation of the contract, he becomes liable to the agent for the damages caused thereby, although it should be observed in this connection that the agent is limited to his action for damages; the courts will not specifically enforce the contract against the principal. But if the contract of agency contains no terms indicating the creation of an agency for a definite period, or if the contract is not supported by a sufficient consideration, it is terminable at will, and the principal by revoking the authority incurs no liability to the agent, unless the agent has entered upon performance of the contract so that a revocation of his authority will work him legal injury." See also to the same effect, 1 Mechem on Agency (2d ed.), sec. 568; 21 R. C. L., p. 823, sec. 8.

[5] It follows from these authorities, to which many more might be added, that when an agency is not such as to constitute what in legal parlance is called a power coupled with an interest, and no third party's rights are involved, the agency, so long as it remains unexecuted, may be effectually revoked at the will of the principal, but that a wrongful revocation will nevertheless render him liable in damages to his agent. In other words, the agency may always be revoked, but the contract of employment will not necessarily be thereby rescinded. The distinction, in principle, is well stated by Judge Cardwell, in *Rowland Lumber Company* v. *Ross,* 100 Va. 275, 281, 40 S. E. 922, 924, as

follows: "Either party to a contract, however solemn its character or binding its form, has the power to violate it, and the courts of law give no redress to him who is injured except compensatory damages, but it is not accurate in law or in morals to say that a party has a right to break its contract. It would be to assert that it is legally right to do what is legally wrong. A person bound by a contract to do or not to do a thing may find it to his advantage not to keep his engagement, for the obligation may be more onerous than the damages likely to be imposed for its breach, but the violation of the contract cannot be regarded as a contractual right."

[6] In the instant case we are of opinion that a valuable consideration for the agreement itself, as distinguished from the mere chance of the agent to earn a commission or compensation, was sufficiently alleged in the declaration. And, while the agency was not coupled with such an interest as to make it irrevocable, the contract which created it was a mutual agreement between competent parties for a lawful purpose and upon a valuable consideration, with the result that neither party could violate it without becoming responsible to the other for the breach.

The case of *Perrow* v. *Rixey*, 119 Va. 192, 89 S. E. 101, is relied upon as sustaining the claim that the agency in the case at bar was revocable. That was a case in which the authority to sell was given by Rixey to Perrow in writing and to the following effect: "I hereby agree to sell that portion of my 'Richlands' farm to the west of the fence * * to any purchaser brought to me by B. F. Perrow, provided that said land nets me $25.00 per acre cash, and provided further, that said sale is consummated within thirty days from date." Before the thirty days expired, but also before the agent produced a purchaser, this authority was revoked, and the agent brought suit to recover commissions on the ground that he had produced a purchaser

within the thirty day period. There was a verdict and judgment for the defendant, and on appeal this court affirmed the judgment and held that as "the paper was unilateral, not under seal, and expressed no valuable consideration," it was a bare power and revocable at will without liability on the principal. The language quoted above differentiates the two cases, as does also the following quotation in the opinion in the *Perrow Case,* taken from Walker on the Law of Real Estate Agency, sec. 15: "Ordinarily, unless a contract of employment is coupled with an interest or is given for a valuable consideration, the authority of the agent may be terminated at will by giving notice, subject only to the requirement that it be given in good faith, and before the broker finds a purchaser."

It is true that in the *Perrow Case* there was in the paper conferring the power a time fixed within which it was to be exercised; and also true that this court quoted with approval the following language from the case of *Brown* v. *Pforr,* 38 Cal. 550: "We are unable to perceive how, under any circumstances, a mere limit as to the time allowed for the performance of a contract by agency to sell land can be construed into an agreement on the part of the principal not to revoke the power." This court was then dealing with a power not supported by a valuable consideration. It was, indeed, the case of a mere *offer* of a contract not consummated by a legal acceptance before the revocation was declared. (See 2 Mechem on Agency, sec. 2446, cited below). All judicial opinions must be interpreted in the light of the particular facts to which they are applied; and the decision in the *Perrow Case* does not hold that a *contract* of agency, carrying the exclusive right to sell real estate, for a definite time, and based upon a valuable consideration, is revocable without liability on the principal. The three elements of (1) exclusive right of sale, (2) definite time limit, and (3) valuable consideration,

all appear in the case under review, and the authorities seem to show conclusively that in such a case the principal must respond to the agent in damages if he breaks the contract. See, in addition to the authorities already cited, 1 Am. & Eng. Ency. L. (2d ed.), 1104; 31 Cyc. 1528; 1 Mechem on Agency (2d ed.), sec. 1552; 21 R. C. L., p. 835, sec. 18; 2 C. J., 535.

[7] We may well conclude the discussion of this branch of the case with the following extracts from 2 Mechem on Agency (2d ed.) : "Where a time is fixed for performance by the broker, a number of considerations arise. If all that the negotiations amount to is an *offer* by the principal that he will pay a commission if a purchaser be found within a certain time, the offer will only be accepted and ripen into a contract by the finding of a purchaser within that time. At any time before that event, the offer may be withdrawn by the principal." (This was the gist of the decision in *Perrow* v. *Rixey, supra.)*

But again, on the same page, the author says: "If what the negotiations amount to is a *contract* of employment for the fixed period, or a binding *contract* that a commission will be paid if a purchaser is found within that time, the broker will usually be entitled to damages in the first case, and, usually, to the amount of his commissions in the second, if he finds a purchaser within that period, although the principal may, in the meantime, have sold the property or withdrawn it from sale." (See p. 2039, sec. 2446).

And again, after showing that a mere *offer* for a fixed time does not become binding on the principal until the agent has accepted it by producing a purchaser (because "until so accepted there is no contract; the broker has promised nothing * * * he may perform or not as he pleases"), the author says: "But, as has already been seen, there may easily be cases in which the principal has so invited the broker to enter upon an undertaking requiring

time for its full completion, that the actual commencement of the performance with the intention of completing it would be such an acceptance as would prevent the principal's withdrawal without liability." (*Idem,* sec. 2452, p. 2049-2051).

[8, 9] The third ground of demurrer is as follows: "It appears upon the face of the said declaration that the damages sought to be recovered for the breach of the alleged contract therein set out, are too remote and speculative to be recovered in a court of law."

The plaintiff bought from the defendant's decedent the exclusive right to sell the property, for a period of one year. The sole purpose of the contract was the acquisition of a profit. While there is more or less uncertainty and confusion in the authorities upon the general subject of profits as an element of damages in suits for breach of contract, it is safe to say that when contemplated profits constitute the sole purpose and object of the contract, and the plaintiff alleges a breach and a consequent loss of profits, he has stated a *prima facie* case, and is entitled to recover such amount as he can prove, with reasonable certainty. he would have made but for the breach. Of course, this general statement of the law is subject to the general qualification that if the declaration should allege such a state of facts as would enable the court to say that no profits at all could be proved, a demurrer would end the case. But when the profits claimed may reasonably, or, as in this case, must necessarily, be presumed to have been within the intent and mutual contemplation of the parties when the contract was made, the mere fact that the exact amount. cannot be calculated with mathematical certainty does not preclude a recovery. In such cases, as said in 1 Sutherland on Damages (3d ed.), sec. 60, "the injured party is entitled to gains prevented and losses sustained if he can prove them with sufficient certainty." To the same effect

is the following language from the opinion by Judge Riely, in *Burruss* v. *Hines*, 94 Va. 413, 416, 26 S. E. 875, 876: "The prohibition against the recovery of profits or gains, when not excluded as unnatural and remote" (here they were natural and direct), "is due mainly to the inability to prove with reasonable certainty that the injury prevented the receipt of profits or gains, and their amount. But if it be shown that the loss of profits or gains was the natural and proximate result of the wrongful act, and their extent is also satisfactorily proved, they may be recovered." The same principle is recognized and approved in *Bristol, etc., Ry. Co.* v. *Bullock Co.,* 101 Va. 652, 44 S. E. 892.

In *United States* v. *Behan,* 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168, the Supreme Court said: "The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damages, namely: first, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of *Masterton* v. *Mayor of Brooklyn,* 7 Hill [N. Y.] 69, [42 Am. Dec. 38], they are 'the direct and immediate fruits of the contract,' they are free from this objection; they are then 'part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation'."

[10] Citation of authorities to the foregoing effect might be multiplied almost indefinitely, as will appear from the copious citations in those from which we have quoted.

The plaintiff is suing for the loss of profits which he alleges he would have realized if there had been no breach of the contract. Such profits having been the purpose of the contract, and mutually contemplated by the parties, and the circumstances alleged tending clearly to show that the same to some extent would have been realized; he is entitled to go to the jury with his case, and to recover such amount as his proof will establish with reasonable certainty.

[11] The last ground of demurrer is stated as follows: "It appears upon the face of the said declaration that the damages sought to be recovered are profits which would have been realized from a business or enterprise never established; such damages cannot be measured and hence cannot be recovered."

The case chiefly relied upon to sustain this branch of the demurrer is *Whitehead* v. *Cape Henry Syndicate*, 111 Va. 193 (68 S. E. 263). In that case the gist of the decision is stated thus in the syllabus: "Pound fishing in which a party has been engaged only one month is a new business, and the profits to be derived therefrom depend not only upon the future bargains and states of the market, but upon other contingencies, such as the run of the fish and the kind and quantity caught. Such profits are dependent upon too many contingencies and are too uncertain to furnish a safe guide in fixing the measure of damages for an injury to, or destruction of, such business, and hence cannot be recovered."

The instant case might fall within the reason and influence of the case cited but for these distinguishing features: (1) The commodity dealt with in the former was a certain tract of land, while in the latter it was an uncertain supply of fish to be caught; (2) Whitehead's business had only been

under way for one month and was held to be a new business, while the realty company had been in business for many years, and the successful conduct thereof in the immediate vicinity of Robertson's property was the avowed inducement on his part to engage the company's services; (3) in the *Whitehead Case* there was no way to prove, with any degree of certainty, that the fish, even if caught, could be sold at a profit, while in this case Robertson himself demonstrated the existence of a market by selling the property himself at an enormous profit over what he was to have as a minimum in his contract with the realty company, and he cannot be heard now to say that the company could not have done at least as well. This latter proposition, though lacking the element of humor, would seem to be a substantial answer to the pointed pleasantry of the distinguished counsel for the defendant, found in the suggestion in their brief, that the sales to be made by Whitehead depended no more on "the run of fish that season" than the realty company's sales would have depended "on the run of suckers" during the year covered by its contract. If Mr. Robertson's purchaser was a sucker, he belonged on the realty company's hook.

[12] A principal cannot, after having made a valid contract with an agent for the exclusive right to sell, render performance on the part of the agent impossible by making the sale himself, and then successfully defend an action for breach of the contract by claiming that the agent might not have made the sale. *Sparks* v. *Reliable Dayton Motor Car Co.*, 85 Kan. 29, 116 Pac. 363, Ann. Cas. 1912C, 1251; *Schiffman* v. *Peerless Motor Car Co.*, 13 Cal. App. 600, 110 Pac. 460, 462; *Green* v. *Cole*, 127 Mo. 587, 30 S. W. 135; 2 Mechem on Agency, (2d ed.) sec. 2445.

We are of opinion that the demurrer should have been overruled; and this court will enter an order to that effect, and remand the cause for further proceedings.

*Reversed.*