## CIRCUIT COURT OF NEW KENT COUNTY

Ware Creek
Real Estate Corp.

     v.

J & R Enterprises
and John R. Filichko

December 9, 2010

Case No. (Civil) CL10-90

By JUDGE EVERETT A. MARTIN, JR.

This is an action *ex contractu* for a commission on the sale of real property. The plaintiff makes no claim under the common law of agency.

In its amended complaint, the plaintiff alleges it entered into an "Exclusive Authorization to Sell" (the "Exclusive Authorization") with the defendants on October 16, 2007; that on June 2, 2008, the defendants and Jack Ass Flats executed a contract under which the defendants sold the property for $300,000 with settlement to occur at a later date; that the defendants acknowledged in the contract that the plaintiff was the procuring cause of the sale; that settlement occurred on August 17, 2009, when the defendants delivered a deed and received $300,000. The defendants have demurred on the ground that the sale occurred after the termination of the Exclusive Authorization. I have reviewed all the submissions from counsel.

Paragraph 4 of the Exclusive Authorization controls. The "initial period of time" referred to in that paragraph is defined in paragraph 1 as "commencing on October 16, 2007, and expiring at midnight on May 1, 2008." As pertinent, paragraph 4 provides:

> If the property is sold or exchanged by Broker, or by Owner with or without the assistance of Broker, within the initial period of time or any extension thereof, Owner agrees to pay Broker a fee of ten percent total sales price (the "Fee"). If within 90 days after the expiration of the initial period of time or any extension thereof, the Property is sold or exchanged by the Broker, by Owner, or by any other person, to a

purchaser or purchasers to whom the Property was shown, offered, or introduced by the Broker, or by any licensed broker or salesperson employed by or affiliated with Broker, Owner agrees to pay Broker the Fee. . . . For purposes of the Agreements, if an offer is presented to Owner within the initial period of time or any extension thereof, but (i) is accepted by Owner after expiration of the initial period of time or any extension thereof, or (ii) Owner makes a counteroffer which is accepted by the purchaser after the expiration of the initial period of time or any extension thereof, the Owner shall pay Broker the Fee as if the Property had been sold during the initial period of time or any extension thereof.

The plaintiff does not plead there was any extension of "the initial period of time." The plaintiff claims the property was "sold" during the ninety-day period immediately thereafter, that is, the property was "sold" when the defendants and Jack Ass Flats signed the contract on June 2, 2008.

The issue is when was the property "sold." "Sold," of course, is the past tense of "sell," the primary definition of which is: "to give up or make over to another for a consideration; dispose of to a purchaser for a price." *Random House Dictionary of the English Language* (1967). I do not believe the word is ambiguous. Ordinarily, there has been no sale until the seller has transferred the property and received the cash.

A court is to construe an unambiguous contract according to the ordinary meaning of its words "unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it," *Ames v. American National Bank*, 163 Va. 1, 39, 176 S.E. 204, 217 (1934), or "unless a contrary meaning plainly appears," *Atlantic Coast Realty Co. v. Townsend*, 124 Va. 490, 499, 98 S.E. 684, 687 (1919). Having reviewed the parts of the contract called to my attention, I conclude the parties have used "sold" to mean "contracted to sell," and I overrule the demurrer.

Under the last sentence of paragraph 4, the owner owes the broker a commission if, for example, the owner receives an offer during the initial period of time but accepts it thereafter. If this occurs "the Owner shall pay Broker the Fee as if the Property had been sold during the initial period of time. . . ." Settlement is not required for the broker to earn the commission. If acceptance of an offer is sufficient to earn the broker his fee in this circumstance, it is unlikely the parties intended "sold" to have a different meaning in the first two sentences of the same paragraph.

The plaintiff also claims the use of "sold" and "sale" in paragraphs B and G of the "Standard Provisions," which were incorporated by reference into the Exclusive Authorization, support his interpretation. I agree. Paragraph B provides "The Property may be sold only by a written

agreement. . . ." An agreement requires the assent of at least two parties; a deed does not. Paragraph G provides "In the event of a sale of the Property, Owner agrees to convey the Property to any purchaser . . . by general warranty deed. . . ." Sale thus precedes conveyance.

The defendants claim this, in effect, turns a special brokerage contract into a general contract because the owner would owe the broker a fee if the contract failed to close in the absence of the fault by either the owner or the purchaser. Paragraph D of the "Standard Provisions" excuses the owner from payment of a commission if there is a default by the purchaser through no fault of the owner. Paragraph E generally requires the commission to be paid if there is a default by the owner. How there could be a failure to close that would not be a "default" by either the purchaser or the owner is an issue I need not address.

I have entered an order overruling the demurrer.