## Staunton.

MOUNT ROGERS FURNITURE COMPANY, A CORPORATION, v.
VIRGINIA MIRROR COMPANY, A CORPORATION.

September 12, 1930.

Absent, Campbell and Holt, JJ.

*John P. Buchanan* and *Harvey B. Apperson,* for the plaintiff in error.

*H. C. Gilmer,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The Mount Rogers Furniture Company, a corporation, complains of a judgment in favor of the Virginia Mirror Company, a corporation. The original action of the mirror company alleged the indebtedness of the furniture company for mirrors sold and delivered to it. The defendant, admitting the correctness of the bill, undertook to set-off a large amount of damages claimed for numerous delays in the shipments, and for failure to supply all of the mirrors which the contract required. The original bill was for $4,890.53. Against this the furniture company claimed damages amounting to $22,989.04.

The bill of offsets reads:

| | |
|---|---:|
| "To amount of freight paid on mirrors......$ | 262.28 |
| "To bill for merchandise shipped to Virginia Mirror Company...................... | 162.05 |
| "To expenses............................. | 76.21 |
| "To damage on cancelled orders............ | 4,556.86 |
| "To overhead expense occasioned by breach of contract........................... | 2,422.00 |
| "To extra labor on account of breach of contract................................ | 5,328.38 |
| "To amount of damage for loss of production on account of breach of contract.......... | 6,884.00 |
| "To damage on account of being unable to complete material in finished product by reason of breach of contract.............. | 1,983.60 |
| "To overcharge on C. O. D. shipment....... | 246.80 |
| "To amount of extra coal................. | 766.86 |
| "To damage on account of extra storage space. | 300.00 |

"$22,989.04"

Upon the first trial of the case there was a verdict against the plaintiff for $8,750 as damages. This verdict the trial court set aside, on motion of the plaintiff, because of its own error in giving certain instructions, and no further allusion need be made to this. Upon the second trial, April 18, 1928, the jury found damages against the plaintiff in the sum of $12,357.68, subject to a credit of $6,357.68, leaving a balance of $6,000 found against the plaintiff. Upon motion of the plaintiff this verdict was also set aside, and it is of this order, and this only, that the furniture company is here assigning error.

The order of the court setting aside that verdict holds "that the defendant is not entitled to recover under its plea of set-off and counterclaim the items therein claimed and set out, respectively, overhead expenses, extra labor, loss

of production, inability to complete material into finished product, extra coal and extra storage space," and so it was adjudged that the verdict of the jury be set aside and a new trial granted; and that the items in defendant's plea of set-off, just referred to, be stricken from the plea of set-off. Then the order proceeds:

"The question of whether or not the defendant is entitled under its plea of set-off to recover damages of any nature other than that indicated in the items so stricken out is not at this time decided * * *." So that, by that order, a new trial was ordered, and these items in the defendant's list of set-offs were left for future determination:

"Freight paid on mirrors...................$  262.28
"Overcharge on C. O. D. shipments..........    246.80
"Merchandise shipped to Virginia Mirror Company.....................................    162.05
"Expenses..................................     76.21
"Damage on cancelled orders................  4,556.86"

Upon these items of set-off the plaintiff was accorded the right again to go to trial. Instead of doing so, however, when the case was called the defendant declined to introduce any evidence, and the correctness of the plaintiff's bill for mirrors actually shipped being admitted, there was a final judgment therefor in favor of the plaintiff for $4,890.53, with interest.

The sole question then presented by the record is whether or not the court erred in setting aside the verdict of April 18, 1928, which found the defendant's damages to be $12,357.68, subject to a credit of $6,357.68.

In setting aside this verdict, the trial judge (Hon. Horace Sutherland), among other things, says this: "This court, on the trial of the case, allowed evidence to go to the jury, over the objection of the attorneys for plaintiff, tending to show that the defendant had on hand a number of suites of furniture which were sold at certain prices, the cost of

production and the selling price, which orders were cancelled on account of the mirrors not being shipped; that the factory was congested and that the said defendant could not run at full capacity which caused them certain damages; that entire output of the factory was sold at a certain price, but that mirrors were not shipped according to contract and that the factory had to close down or run at a reduced rate which caused certain damages to defendant by way of lost profits; that the defendant had to rent storage space for some of its furniture which was caused by the plaintiff's failure to comply with its contract, etc. The above evidence was, of course, the basis of the defendant's right to recover damages. Whether or not this was proper evidence to go to the jury under the circumstances of this case, and whether or not the defendant was entitled to recover for such damages, is the only question for decision.

"Generally, when goods are purchased and the seller fails to deliver according to the terms of his contract, if the goods are reasonably purchasable in the open market, it is the duty of the buyer to purchase same on the open market and his measure of damages is the difference between the contract price and the market price at the time and place of delivery, plus interest, but as hereinbefore stated, I am of opinion that the conduct of the plaintiff excused the defendant from doing this. Now under this state of facts, what damages is the defendant entitled to recover against the claim of the plaintiff? It is entitled to recover such damages as naturally and directly flow from the breach of the contract, including loss of profits if the breach of contract was the proximate cause of the loss. *Whitehead* v. *Cape Henry Syndicate*, 111 Va. 193, 68 S. E. 263; *Perry Tie, etc., Co.* v. *Reynolds*, 100 Va. 264, 40 S. E. 919, where it is stated that when profits can be proved with certainty and definiteness they may be recovered.

But here arises the important distinction between direct damages and consequential damages." Then follows a quotation from *Washington & Old Dominion Ry.* v. *Westinghouse Co.*, 120 Va. 620, 89 S. E. 131, 91 S. E. 646, and a definition of consequential damages; and then this:

"Now can it be said that the plaintiff should have known, or contemplated, that if it failed to comply with the terms of its contract the defendant would have orders for goods, which it had sold, cancelled, thereby causing a great loss of profits? Possibly so as to this one item, but could they have possibly contemplated that the defendant had sold the entire output of the factory at a certain price, and that a breach of contract would prevent the defendant from running its factory at full capacity; that the defendant would have to pay out large sums of money for rent of building to store furniture in on account of factory becoming congested, and that extra overhead expense would be necessary, etc.? I do not think the plaintiff could have possibly contemplated such damages unless they had been notified of some special circumstances or conditions, and they were not given any notice whatever until long after the contract was made. These items could not be direct damages as they do not flow from the direct act of the parties, but from some of the consequences of such act.

"I am of opinion, therefore, that the items of damages above referred to are consequential, and that there was no liability on the plaintiff for any of them, with the possible exception of loss of profits for furniture actually manufactured and sold, and that this court should have sustained the objection made by plaintiff's attorneys to the introduction of said evidence. The verdict will have to be set aside * * * and as I have some doubt as to the right of the defendant to recover for loss of profits on furniture actually manufactured and sold, a new trial will be awarded."

There appears to be no doubt whatever about the fair construction of this order and the opinion which accompanied it.

The furniture plant had been recently bought by the Mount Rogers Furniture Company at public auction, at a receiver's sale, for the sum of $15,000. There was included in the purchase price about $4,000 worth of unfinished furniture and a chair factory, valued at at least $2,500, leaving approximately $8,500 as the purchase price of the furniture factory. There is no evidence that it was ever profitably operated at any time, and yet this bill of offsets for damages caused by the failure of the mirror company to ship it certain mirrors for use in its furniture amounts to over $22,000.

One, of the largest items in the bill of offsets is $6,884 styled loss of production on account of breach of contract. It is claimed that the entire possible output of the factory had been sold, and that the congestion in the factory prevented it from running at full capacity, and so resulted in this loss. We are perforce left to speculate (or follow the speculation of a witness) as to what the entire output would have been. The witness claimed that but for the congestion the factory would have run twenty-four days in every month, and that the weather during the period was good enough to keep the factory running; that they had the men to make the furniture, and the money to pay the men, and that had they run at full capacity they would have made 574 suites of furniture during the time, at an average profit of $12.00 each, which caused a total loss on account of this item of $6,884. The other items in the bill of offsets which the court struck out are based upon similar contingencies, estimates and conjectures. We are justified in saying that all of the items in the bill of offsets struck out by the court were clearly uncertain, exaggerated and fantastic.

There was no notice, express or implied, to the plaintiff that the failure to ship certain mirrors to the defendant would impose responsibility for the continuous and profitable operation of the factory. There can be no doubt whatever about the fact that the items in the bill which the court struck out were not recoverable as damages, because remote, uncertain and conjectural and speculative. Just as certainly as the court struck out these items, it also as certainly left open for consideration the question of profits, the amount of which could be proved, on certain furniture claimed to have been actually sold, which profits the defendant claimed to have lost because of plaintiff's breach of contract to ship the mirrors promptly and as ordered.

We think it unnecessary to repeat the general rules governing such cases because it has been so frequently and recently done. *Burrus* v. *Hines*, 94 Va. 416, 26 S. E. 875; *Manss-Owens Co.* v. *Owens & Son*, 129 Va. 183, 105 S. E. 543; *Richmond Leather Mfg. Co.* v. *Fawcett*, 130 Va. 484, 107 S. E. 800; *Lehigh, etc., Co.* v. *Virginia Steamship Co.*, 132 Va. 257, 111 S. E. 104; *Forbes* v. *Wyatt*, 143 Va. 802, 129 S. E. 491.

It may be and doubtless is true that if proved by credible testimony, the defendant had the right to recover as damages such profits as it could have shown that it lost as the result of cancelled orders for furniture sold which it was unable to supply to its customer as the direct consequence of the plaintiff's breach of the contract to supply the mirrors therefor. While speculative, remote or uncertain profits cannot be recovered as damages, nevertheless, where the profits are direct and can be proved with reasonable certainty, generally they may be recovered. The defendant, however, in this case, declined to go to trial upon this issue, and it is unnecessary for us to say more about it. The question is not as to conflicts in the

testimony because there are few conflicts as to these extravagant claims. They were in the main the expression of optimistic but disappointed hopes and guesses as to profits which possibly might have been made had the conditions been different. The order of the court setting aside the verdict and striking out of the bill of offsets the items indicated was clearly right, because these damages were too remote, uncertain and speculative. As has been stated, the correctness of this ruling is the only question which we have to determine. Had the court permitted this fantastic verdict to stand, it would have been gross error. Courts should respect verdicts of juries in such cases, when based upon admissible and credible testimony, but cannot evade their duty when called upon to pass upon the legal questions presented by motions to set aside verdicts. There was nothing else which the court in this case could properly do, and when it accorded the defendant the right to a new trial as to its claim of direct loss of profits on furniture actually sold, it accorded every right to which it was entitled.

The briefs are voluminous and discuss many questions which might have arisen in the case, but we do not deem it necessary to make any further allusion to these questions. In fairness to the plaintiff we should doubtless say that one of the reasons given by it for not shipping the mirrors was that the defendant had failed to pay the bills when due for those actually shipped, and one of its defenses is that the damages, if any, have been waived and the counterclaim is an afterthought because the defendant acknowledged the correctness of the plaintiff's account and promised to pay it long after the alleged damages now claimed had been suffered.

By some inadvertence the final judgment failed to credit the defendant with two items of its bill of offsets which were admitted to be just by the plaintiff, namely,

$162.05 for two sample suits of furniture sold by the defendant to the plaintiff, and for overcharges on certain C. O. D. shipments, $246.80, aggregating $408.85. The final judgment for $4,890.53 will therefore be amended by deducting this amount, $408.85, therefrom, and judgment will be entered here in favor of the plaintiff for $4,481.68, with interest thereon at the rate of six per cent per annum from the 1st day of April, 1923, and costs.

*Amended and affirmed.*